# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO: 5:13-CV-66-DSC

| | |
|---|---|
| DIANA LOUISE HOUCK, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LIFESTORE BANK, et. al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**THIS MATTER** is before the Court on "Defendant Lifestore Bank F.S.A.'s Motion to Dismiss Second Amended Complaint or, in the alternative, … Motion for Summary Judgment" (document #52) and "Defendant Grid Financial Services, Inc.'s Motion to Dismiss … Second Amended Complaint or, in the alternative, … Motion for Summary Judgment" (document #54), as well as the parties' associated briefs and exhibits. See documents ## 52-56, and 65.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636 (c). These Motions are now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the Court will grant in part and deny in part the Motions to Dismiss, as discussed below.

## I. FACTUAL AND PROCEDRURAL BACKGROUND

This matter involves the foreclosure of a deed of trust on real property located at 318 Todd Railroad Grade Road ('the Property") in Todd, North Carolina. On February 22, 2007, Plaintiff Diana Louise Houck ("Houck") borrowed $123,000.00, as evidenced by a promissory

1

note ("the Note") and secured by a Deed of Trust recorded in Book 361 at Page 2052 by the Ashe County Register of Deeds ("the Deed of Trust").

Plaintiffs allege that sometime in July or August 2009, Diana Houck contacted the Note holder, Defendant LifeStore Bank Corporation, F.S.A. ("Lifestore") requesting a loan modification and lower monthly payments. Lifestore referred her to Defendant Grid Financial Services, Inc. ("Grid"), which was acting as the collection agent on the delinquent loan. Plaintiffs allege that a Grid employee advised Houck to stop making any mortgage payments so that she could qualify for a modification of the loan. Plaintiffs contend that the employee knew that Grid and Lifestore would not approve the modification.

On or about July 19, 2011, Defendant Substitute Trustee Services, Inc. ("STS") initiated a foreclosure action in Ashe County Superior Court at the request of Lifestore.

On August 23, 2011, an Assistant Clerk of Superior Court issued an Order Allowing Foreclosure of the Property.

On September 12, 2011, Houck filed for Chapter 13 Bankruptcy Protection in the United States Bankruptcy Court for the Western District of North Carolina, Case No.: 11-51141 (the "first petition"). According to the Second Amended Complaint, only LifeStore was sent notice of the first petition. The foreclosure proceeding was stayed the following day.

On September 30, 2011, the Court dismissed the first petition.

On November 4, 2011, STS moved to re-open the foreclosure proceeding.

On December 16, 2011, Houck again filed for Chapter 13 Bankruptcy Protection in the United States Bankruptcy Court for the Western District of North Carolina, Case No.: 11-51513 (the "second petition"). Houck failed to file a matrix, schedule and other information necessary to properly serve her creditors. That same day, the Court issued a Notice of Deficient Filing and

Order to Appear and Show Cause (W.D.N.C. Bankr. 11-51513 Docs. 2 and 3). According to the Second Amended Complaint, only LifeStore was sent notice of the second petition. There is no allegation that Grid ever received notice of the second petition.

On December 20, 2011, STS sold the Property at a foreclosure sale.

On December 21, 2011, the second petition was dismissed (W.D.N.C. Bankr. 11-51513 Doc. 9).

On April 26, 2013, Plaintiffs filed their Complaint, which as amended, asserts a claim pursuant to 11 U.S.C. § 362(k) for conducting a foreclosure sale in violation of the bankruptcy stay. Plaintiffs also assert state law claims for unfair and deceptive trade practices, unfair debt collection, breach of contract, fraud, constructive fraud, intentional and negligent infliction of emotional distress, and civil conspiracy. These claims are asserted against both Defendants. The gravamen of the claims is that Lifestore and Grid conspired to cause Plaintiffs to fall behind on mortgage payments so that Lifestore could foreclose. Plaintffs assert that Lifestore had notice of the second petition and violated the bankruptcy stay by conducting the foreclosure sale.

On October 1, 2013, the Court <u>granted</u> Defendant STS's Motion to Dismiss. The only claims pled against STS were for violation of the bankruptcy stay. Plaintiffs did not allege that STS had notice of the second petition. <u>See</u> "Memorandum and Order" at 4-5 (document #51).

On October 7, 2013, Lifestore and Grid filed their respective Motions to Dismiss which have been fully briefed and are ripe for disposition.

## II. DISCUSSION

## A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume

their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

### B. Claims Related to Violation of Bankruptcy Stay

Applying those legal principles to the factual allegations here, Plaintiffs have failed to state a claim against Grid under 11 U.S.C. § 362(k). The Second Amended Complaint is replete with generalized and conclusory allegations that the sale was "improper" or "conducted improperly." The only specific factual allegation against Grid is that the foreclosure sale was conducted in violation of the bankruptcy stay.

In order to prevail on a claim for a violation of an automatic stay, the debtor must show "(1) injury to the debtor (2) cause[d] by a 'willful' violation of the stay." In re Peterson, 297 B.R. 467, 470 (W.D.N.C 2003)(citing In re Hamrick, 175 B.R. 890, 893 (W.D.N.C. 1994)). The debtor must establish that: (1) the creditor knew of the existence of the stay; (2) the creditor's actions were willful; and (3) the creditor's actions violated the stay. Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348, 355 (5th Cir. 2008). Despite amending their Complaint twice, Plaintiffs have failed to allege that they sent notice of the second petition to Grid or that Grid had

any notice of the petition.

Absent sufficient allegations that Grid had notice of the bankruptcy stay, Plaintiffs' state law claims for unfair debt collection (N.C. Gen. Stat § 75-55) and breach of contract fail as well. See, e.g., Davis Lake Comm. Ass'n, Inc. v. Feldman, 138 N.C. App. 252 (2000)(claim for unfair debt collection requires unfair act); Fletcher v. Fletcher, 123 N.C. App. 744, 752 (1996) ("breach of contract is only actionable if a material breach occurs -- one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform"). Bald assertions that the foreclosure sale was "improper" are insufficient. Twombly, 550 U.S. at 555.

For these reasons, and the other reasons stated in Defendant Grid's briefs, its Motion to Dismiss is granted as to Plaintiffs' claims under 11 U.S.C. § 362(k), N.C. Gen. Stat § 75-55, and for breach of contract.

Plaintiffs have alleged that Lifestore received notice of the second petition. For this reason, and the other reasons stated in Plaintiffs' briefs, Defendant Lifestore's Motion to Dismiss is denied as to those claims.

### C. Claims Related to Civil Conspiracy

The remainder of Plaintiffs' claims rest on the allegation that Grid and Lifestore conspired to facilitate a foreclosure by causing Plaintiff to fall behind on her mortgage payments.

The elements of a claim for intentional infliction of emotional distress are extreme and outrageous conduct, which is intended to cause and does cause severe emotional distress to another. Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 334-35 (1981). The initial determination of whether conduct is extreme and outrageous is a question of law for the court.

6

Briggs v. Rosenthal, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311 (1985).

The Second Amended Complaint contains only general and conclusory allegations that do not show the extreme and outrageous conduct necessary for intentional infliction of emotional distress.

The Second Amended Compliant is also devoid of factual allegations to support a claim for negligent infliction of emotional distress. To be actionable, the alleged tortuous action must proximately cause a "severe and disabling emotional or mental condition which [is] generally recognized and diagnosed by professionals trained to do so." Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990). Although Plaintiffs allege that Diana Houck has suffered "severe emotional distress" and "mental anguish," they fail to allege that she has suffered any recognized and diagnosed mental condition. See Horne v. Cumberland County Hosp. Sys., 746 S.E.2d 13, 20 (N.C. Ct. App. 2013) (affirming dismissal of negligent infliction of emotional distress claim where "the complaint merely asserts that [Defendant's] actions were 'the direct and proximate cause of [plaintiff]'s severe emotional distress' - without any factual allegations regarding the type, manner, or degree of severe emotional distress she claims to have experienced").

For these reasons, and the other reasons stated in Defendants' briefs, their Motions to Dismiss are granted as to Plaintiff's claims for intentional and negligent infliction of emotional distress.

For the reasons stated in Plaintiffs' briefs, Defendants' Motions are denied as to Plaintiffs' remaining claims.

### III. ORDER

**IT IS THEREFORE ORDERED THAT:**

1. "Defendant Lifestore Bank's, F.S.A.'s Motion to Dismiss Second Amended Complaint" (document #52) is **GRANTED IN PART and DENIED IN PART**, that is, is **GRANTED** as to Plaintiffs' claims for intentional and negligent infliction of emotional distress. The Second Amended Complaint is **DISMISSED WITH PREJUDICE** as to those claims. The Motion is **DENIED** in all other respects.

2. "Defendant Grid Financial Services, Inc.'s Motion to Dismiss … Second Amended Complaint" (document #54) is **GRANTED IN PART and DENIED IN PART**, that is, is **GRANTED** as to Plaintiffs' claims under 11 U.S.C. § 362(k), under N.C. Gen. Stat § 75-55, for breach of contract, and for intentional and negligent infliction of emotional distress. The Second Amended Complaint is **DISMISSED WITH PREJUDICE** as to those claims. The Motion is **DENIED** in all other respects.

3. The Clerk is directed to send copies of this Memorandum and Order to the parties' counsel.

**SO ORDERED**.

Signed: January 15, 2014

David S. Cayer
United States Magistrate Judge