**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 13-2326**

———————————

DIANA LOUISE HOUCK; STEVEN G. TATE,

        Plaintiffs - Appellants,

    v.

SUBSTITUTE TRUSTEE SERVICES, INC.,

        Defendant - Appellee,

    and

LIFESTORE BANK; GRID FINANCIAL SERVICES, INC.,

        Defendants.

------------------------

PAULA STEINHILBER BERAN,

        Court-Assigned Amicus Counsel.

———————————

Appeal from the United States District Court for the Western
District of North Carolina, at Statesville.   David S. Cayer,
Magistrate Judge.  (5:13-cv-00066-DSC)

———————————

Argued:  May 12, 2015                    Decided:  July 1, 2015

———————————

Before NIEMEYER, DIAZ, and FLOYD, Circuit Judges.

———————————

Vacated, reversed in part, and remanded by published opinion.
Judge Niemeyer wrote the opinion, in which Judge Diaz and Judge
Floyd joined.

———————————

M. Shane Perry, COLLUM & PERRY, Mooresville, North Carolina, for
Appellants.  Jeffrey Allen Bunda, HUTCHENS LAW FIRM, Charlotte,
North Carolina, for Appellee. Paula Steinhilber Beran, TAVENNER
& BERAN, PLC, Richmond, Virginia, as Court-Assigned Amicus
Counsel.

———————————

NIEMEYER, Circuit Judge:

Diana Houck commenced this action under 11 U.S.C. § 362(k), alleging that the defendants foreclosed on and sold her homestead in violation of the automatic stay triggered by her filing of a Chapter 13 bankruptcy petition. The district court granted the motion to dismiss filed by one of the defendants, Substitute Trustee Services, Inc. (the "Substitute Trustee"), concluding that Houck failed to allege facts that plausibly supported her allegation that the violation of the automatic stay was willful, a necessary element of a § 362(k) claim. Because we find to the contrary, we vacate the district court's judgment, reverse its order dismissing Houck's claims against the Substitute Trustee, and remand for further proceedings.

I

In 2000, Houck's father deeded to her part of the family farm located in Ashe County, North Carolina. After Houck had secured financing from a predecessor to LifeStore Bank, F.S.A., she and her then-fiancé, Ricky Penley, placed a mobile home on part of the homestead.

In 2007, Houck refinanced the loan so that she and Penley could remodel the family farmhouse, but within a year, she lost her job and began having difficulty making her loan payments. In the summer of 2009, after she and Penley were married, Houck

3

asked LifeStore for a loan modification. LifeStore, however, referred her to Grid Financial Services, Inc., a debt collection agency, which denied her request because she was unemployed. Houck thereafter defaulted on her loan.

In July 2011, the Hutchens Law Firm (formerly Hutchens, Senter, Kellam & Pettit, P.A.) served Penley with a notice of foreclosure. To stop the foreclosure proceedings, Houck, acting pro se, filed a Chapter 13 bankruptcy petition on September 12, 2011. The next day, the Hutchens Law Firm notified the Clerk of the Superior Court of Ashe County that Houck had filed a bankruptcy petition and consequently that all foreclosure proceedings had to be stayed. A few weeks later, however, the bankruptcy court dismissed Houck's petition because she had failed to file certain schedules and statements in accordance with applicable bankruptcy rules, and the Substitute Trustee, by its counsel, the Hutchens Law Firm, reactivated the foreclosure proceedings.

On December 16, 2011, Houck, again acting pro se, filed a second Chapter 13 bankruptcy petition, again to stop the foreclosure proceedings. On that same day, Penley called the Hutchens Law Firm to notify it of the bankruptcy filing. The employee of the Firm with whom Penley spoke acknowledged that the Firm had a file for Houck. Penley told the employee that Houck had filed a second bankruptcy petition earlier that day,

4

and he provided the employee with the new case number. On that same day, Penley also contacted LifeStore to notify it of the new bankruptcy petition. LifeStore told Penley that it intended to wait for notice from the bankruptcy court before taking any action.

On December 18, 2011, two days after Houck had filed her second bankruptcy petition, the bankruptcy court ordered Houck to appear and show cause why her petition should not be dismissed. Two days later, on December 20, 2011, the Substitute Trustee, represented by the Hutchens Law Firm, sold Houck's homestead at a foreclosure sale. The following day, the bankruptcy court dismissed Houck's second bankruptcy petition. Because Houck had filed the second petition with the purpose of preventing the sale of her homestead and it had already been sold, she did not object to the petition's dismissal. Thereafter, Penley endeavored unsuccessfully to undo the sale. In March 2012, after the sheriff issued a notice to vacate, Houck and Penley left the homestead and moved into a small cabin.

Houck retained counsel and commenced this action, naming as defendants LifeStore, Grid Financial, and the Substitute Trustee and asserting a claim against them under 11 U.S.C. § 362(k) for violation of the automatic stay. She also asserted several related state law claims.

5

The Substitute Trustee filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), contending that the complaint had failed to allege that the Substitute Trustee was aware of the second bankruptcy petition's filing at the time it conducted the foreclosure sale of Houck's homestead. The district court granted the motion by order dated October 1, 2013, concluding that Houck had "failed to allege that [she] sent notice of the second petition to [the Substitute Trustee] or that [the Substitute Trustee] had any notice of the [bankruptcy] petition." Based on that deficiency, the court also dismissed Houck's related state law claims. On October 28, 2013, Houck filed an interlocutory appeal from the district court's order dismissing her claims against the Substitute Trustee.

The remaining defendants, LifeStore and Grid Financial, thereafter filed various motions to dismiss or for summary judgment. In one of those motions, Grid Financial contended that the district court lacked subject matter jurisdiction over Houck's § 362(k) claim, maintaining that the provision did not create a private cause of action that could be adjudicated outside of the bankruptcy court. By order dated February 20, 2014, the district court granted Grid Financial's motion and dismissed Houck's complaint, agreeing that it lacked subject matter jurisdiction over Houck's federal claim for violation of

6

the automatic stay and declining to exercise its discretion to adjudicate her state law claims. The Clerk of Court thereafter entered judgment and closed the case.

Subsequently, we, sua sponte, dismissed Houck's pending appeal of the district court's October 1, 2013 order dismissing the Substitute Trustee because it had been taken from an interlocutory order. Houck v. Substitute Tr. Servs., Inc., 582 F. App'x 230, 230 (4th Cir. 2014) (per curiam). We concluded further that the jurisdictional defect was not cured by the district court's February 20, 2014 order granting Grid Financial's motion to dismiss for lack of subject matter jurisdiction, as that order was also not final. Id. at 230 n.*.

Thereafter, Houck filed motions requesting that the district court reopen the case and reconsider its February 20, 2014 order. The district court denied the motions, reiterating that it had finally decided the case with that order. Houck then filed an unopposed motion in our court for clarification, seeking to resolve her procedural predicament created by the district court's statement that its February 20, 2014 order finally closed the case and our contrary statement that that order was not final. In response, we recalled the mandate issued on our dismissal of Houck's appeal and granted panel rehearing.

7

In her now-reopened appeal, Houck contends that, in dismissing her § 362(k) claim against the Substitute Trustee, the district court applied the wrong legal standard for ruling on a Rule 12(b)(6) motion and erroneously concluded that her complaint failed to allege sufficient facts to state a plausible claim for relief.

## II

At the outset, we determine whether we have jurisdiction to hear Houck's appeal. See, e.g., Chevron Corp. v. Page (In re Naranjo), 768 F.3d 332, 342 (4th Cir. 2014).

In its October 1, 2013 order, the district court granted the Substitute Trustee's motion to dismiss on the ground that Houck's complaint failed to allege that she had given the Substitute Trustee notice of her bankruptcy petition before the Substitute Trustee sold her homestead, thus precluding any claim that the Substitute Trustee's conduct was willful. But because LifeStore and Grid Financial were not parties to that motion and remained defendants in the action, Houck's appeal of the October 1 dismissal order was interlocutory. Moreover, Houck made no request that the district court certify the order as a final judgment under Federal Rule of Civil Procedure 54(b), although it appears that she could have satisfied that rule's requirement. See, e.g., Nystedt v. Nigro, 700 F.3d 25, 29 (1st

8

Cir. 2012) (upholding a Rule 54(b) certification of an order granting a Rule 12(b)(6) motion to dismiss filed by some but not all of the defendants).    Consequently, we dismissed Houck's appeal sua sponte because it was not taken from a final decision, as required by 28 U.S.C. § 1291(a).    Houck, 582 F. App'x at 230.

After Houck requested that we reconsider the effect of the district court's February 20, 2014 order granting Grid Financial's motion to dismiss for lack of subject matter jurisdiction, we recalled our mandate and now hear this appeal to consider her arguments.

If the district court's February 20, 2014 order, entered several months after the court had dismissed Houck's claims against the Substitute Trustee, was a final judgment, then Houck's appeal might be reviewable under the doctrine of cumulative finality -- a finality achieved by the cumulative effect of the October 1, 2013 dismissal order and the February 20, 2014 dismissal order.    See Equip. Fin. Grp., Inc. v. Traverse Computer Brokers, 973 F.2d 345, 347 (4th Cir. 1992) (recognizing cumulative finality in circumstances where all claims are dismissed, albeit at different times, before the appeal taken from the first dismissal order is considered).

Upon close review of the district court's February 20, 2014 order, we conclude that it was indeed a final judgment.    In that

9

order, the district court granted Grid Financial's motion to dismiss -- LifeStore was not a party to the motion -- concluding that it did not have subject matter jurisdiction over Houck's § 362(k) claim for violation of the Bankruptcy Code's automatic stay. Because subject matter jurisdiction goes to the power of the court to adjudicate a claim, an order dismissing a claim for lack of subject matter jurisdiction necessarily dismisses the claim as to all defendants. And, indeed, the district court's February 20, 2014 order reflected this effect by dismissing the entire complaint without limiting its ruling to any particular party. Consistently, the district court also directed the Clerk of Court to enter judgment by way of a separate docket entry, as required by Federal Rule of Civil Procedure 58 for entry of a final judgment. Finally, the court later confirmed that it had intended to dismiss the entire case when it denied Houck's motions to reopen the case and to reconsider its February 20, 2014 ruling. Specifically, it stated that "[o]n February 20, 2014, the Court dismissed [Houck's] only federal claim," and it declined to exercise supplemental jurisdiction over her pendent state law claims. Because the district court's February 20, 2014 order disposed of the entire case, "leav[ing] nothing for [it] to do," United States v. Breeden, 366 F.3d 369, 372 (4th Cir. 2004) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 467 (1978)) (internal quotation marks omitted), the order was a

10

final judgment.  This brings us to consideration of the doctrine of cumulative finality.

In Equipment Finance, we articulated the requirements for application of the doctrine.  There, the district court granted summary judgment to one of two defendants, and the plaintiff appealed the district court's order.  Equip. Fin., 973 F.2d at 346-47.  While the appeal was pending, the plaintiff voluntarily dismissed its claim against the second defendant.  Id. at 347. On appeal, we rejected the first defendant's argument that we lacked jurisdiction, concluding that the subsequent dismissal of the claim against the remaining defendant prior to our consideration of the appeal "effectively satisfie[d] the finality requirements of Rule 54(b)."  Id.  Noting that the case's "procedural circumstances . . . warrant[ed] a practical approach to finality," we recognized a doctrine of "cumulative finality where all joint claims or all multiple parties are dismissed prior to the consideration of the appeal."  Id.  The doctrine applies, however, only when the appellant appeals from an order that the district court could have certified for immediate appeal under Rule 54(b).  See In re Bryson, 406 F.3d 284, 287-89 (4th Cir. 2005).

In this case, the district court dismissed completely Houck's claims against the Substitute Trustee in its October 1, 2013 order, leaving open only her claims against LifeStore and

11

Grid Financial. Because the court could have certified such an order as a final judgment under Rule 54(b) and because the court later entered final judgment against the remaining defendants with its February 20, 2014 order before we considered Houck's interlocutory appeal, we conclude that the doctrine of cumulative finality applies and that we therefore have jurisdiction to hear her appeal.[1]

### III

A second jurisdictional issue is presented by the district court's February 20, 2014 order, in which the court dismissed Houck's federal claim on the ground that it lacked subject matter jurisdiction. Of course, if the court lacked subject matter jurisdiction to hear Houck's § 362(k) claim, it could not have ruled on the Substitute Trustee's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted.

As noted above, on February 20, 2014, the district court concluded, without further discussion, that a claim under

---

[1] Houck argues, unnecessarily as it turns out, that we could hear her appeal under the collateral order doctrine. That doctrine, however, would not be applicable here, because Houck's claim against the Substitute Trustee was not a collateral matter and Houck could well have obtained review of the dismissal order on appeal from the final judgment. See generally Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100 (2009); Swint v. Chambers Cnty. Comm'n, 514 U.S. 35 (1995).

12

§ 362(k) for violation of the automatic stay could only be brought in a bankruptcy court, not in a district court. It relied for support on Scott v. Wells Fargo Home Mortgage, Inc., 326 F. Supp. 2d 709, 719 (E.D. Va.), aff'd sub nom. Scott v. Wells Fargo & Co., 67 F. App'x 238 (4th Cir. 2003) (per curiam), where the district court stated, "[I]t is doubtful that a violation of § 362[k] is cognizable in this Court. While § 362[k] arguably creates [a] private right of action for willful violation of [the] automatic stay, [it] does not create a private cause of action outside of the Bankruptcy Court for violations of [the] automatic stay." (Citation omitted). The Scott court in turn relied for support on Dashner v. Cate, 65 B.R. 492 (N.D. Iowa 1986).

But in Dashner, the district court did not consider § 362(k) because, at the time of the stay violation at issue there, § 362(k) had not yet been enacted. 65 B.R. at 494. The Dashner court simply held that before 1984 -- i.e., before the creation of what is now a § 362(k) cause of action -- nothing in the Bankruptcy Code "indicate[d] that Congress intended to create a private right of action outside of [the] bankruptcy court" for a violation of the automatic stay. Id. at 495. To reach that conclusion, the court pointed to Stacy v. Roanoke Mem'l Hosps. (In re Stacy), 21 B.R. 49 (Bankr. W.D. Va. 1982). The Stacy court likewise considered a pre-1984 violation of the

13

automatic stay and concluded, "The proscriptive provision of the Code in question here, the § 362 automatic stay provision, is not a proscription to be enforced by a debtor or any third party.  A stay is an order of the [bankruptcy] court, to be enforced by the [bankruptcy] court." Id. at 52.

Thus, both Dashner and Stacy, on which Scott relied, analyzed the pre-1984 version of § 362, which lacked subsection (k)'s private cause of action, and therefore are inapposite. For that reason, neither the district court's opinion in Scott nor our unpublished, one-paragraph affirmance of that decision supports the district court's determination below that only a bankruptcy court may entertain a § 362(k) claim.

Both Houck and the Substitute Trustee now agree that the district court erred in determining that it lacked jurisdiction to adjudicate Houck's § 362(k) claim.  But because subject matter jurisdiction cannot be conferred by agreement, see McCorkle v. First Pa. Banking & Trust Co., 459 F.2d 243, 251 (4th Cir. 1972), we appointed counsel to submit an amicus curiae brief defending the district court's position on the issue.[2]  We turn now to whether the district court erred in concluding that it lacked subject matter jurisdiction to adjudicate a claim brought under § 362(k).

_____

[2] We are grateful to Paula Steinhilber Beran, Esq., for providing this "friend of the court" service to us.

14

As background, the filing of a bankruptcy petition operates immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate. See 11 U.S.C. § 362(a). This automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." S. Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. "It gives the debtor a breathing spell from his creditors" and "stops all collection efforts, all harassment, and all foreclosure actions." Id.

Before 1984, when Congress enacted § 362(k) (designated § 362(h) when enacted), the automatic stay appeared to be merely proscriptive. Section 362(a) provided that the filing of a bankruptcy petition "operates as a stay," without prescribing any sanction for its violation. 11 U.S.C. § 362(a). The Bankruptcy Code simply gave the bankruptcy court authority to administer the proscription. For example, § 362(d) authorized the bankruptcy court to "grant relief from the stay," and § 362(e) and § 362(f) otherwise authorized the bankruptcy court to regulate the stay's length, conditions, and termination. Thus, courts had held that the § 362(a) automatic-stay provision did not provide a party with an independent right of action for damages but rather with a procedural mechanism to be regulated and enforced by the bankruptcy court. See, e.g., Stacy, 21 B.R. at 52.

In 1984, however, with the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (codified in scattered sections of 11 and 28 U.S.C.), Congress created a private cause of action for the willful violation of a stay, authorizing an individual injured by any such violation to recover damages. See 11 U.S.C. § 362(k).[3] In creating the cause of action, Congress did not specify which courts possess jurisdiction over a § 362(k) claim for violation of the automatic stay.

Under the Bankruptcy Amendments and Federal Judgeship Act, the district courts were given "original and exclusive jurisdiction in all cases under title 11," 28 U.S.C. § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," id. § 1334(b). But they were also

---

[3] Section 362(k) reads in full:

(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

(2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

16

authorized to refer to bankruptcy judges any such cases or proceedings. See id. § 157(a); Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2171 (2014). In addition, the Act authorized the district courts to withdraw, in whole or in part, any case or proceeding that they had referred. See 28 U.S.C. § 157(d). In short, while the district courts were given jurisdiction over bankruptcy cases, Congress also delegated to the bankruptcy courts, "as judicial officers of the [district courts]," Wellness Int'l, Ltd. v. Sharif, 135 S. Ct. 1932, 1945 (2015) (quoting 28 U.S.C. § 151) (internal quotation marks omitted), adjudicatory authority, subject to the district courts' supervision as particularized in § 157 and the limits imposed by the Constitution. In no circumstance, however, did the Act, in conferring such adjudicatory authority, give a bankruptcy court jurisdiction to the exclusion of a district court.

A claim under § 362(k) for violation of the automatic stay is a cause of action arising under Title 11, and as such, a district court has jurisdiction over it. Of course, under § 157(a), a district court may refer a § 362(k) claim to the bankruptcy court. If the § 362(k) claim did not "stem[] from the bankruptcy itself or would [not] necessarily be resolved in the claims allowance process," Stern v. Marshall, 131 S. Ct. 2594, 2618 (2011), or would only "augment the bankruptcy estate

17

and would otherwise exis[t] without regard to any bankruptcy proceeding," Wellness, 135 S. Ct. at 1941 (alteration in original) (citation and internal quotation marks omitted), the § 157 referral would be for recommended findings of fact and conclusions of law, see Exec. Benefits, 134 S. Ct. at 2171-72, 2175.  But even if the § 157 referral authorized the bankruptcy court to adjudicate the claim to final judgment, it would not deprive the district court of jurisdiction.  See 28 U.S.C. § 1334(b); see also Justice Cometh, Ltd. v. Lambert, 426 F.3d 1342, 1343 (11th Cir. 2005) (per curiam); Price v. Rochford, 947 F.2d 829, 832 n.1 (7th Cir. 1991).  But see Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117, 121 (2d Cir. 2001) (per curiam) (stating, without considering 28 U.S.C. § 1334, that a § 362(k) claim "must be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases").

The amicus contends that jurisdiction to hear Houck's § 362(k) claim was vested solely in the bankruptcy court because of a standing referral order, entered under § 157(a), which has been in place in one form or another in the Western District of North Carolina since July 30, 1984.  At the time relevant to this case, that order provided that "all bankruptcy matters" were "automatically referred" to the bankruptcy judge.  The amicus argues that, under § 157(d), until such time as that

18

reference is withdrawn, the district court has ceded its jurisdiction to the bankruptcy court. She maintains that § 157(d)'s requirement that "cause" be shown for a discretionary withdrawal of a referral confirms her interpretation. See 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown" (emphasis added)).

But nowhere in the text of § 157 is there any indication that the provision is jurisdictional, as the amicus claims. The text indicates that § 157 is simply a procedural mechanism authorizing a bankruptcy court, upon referral from a district court (1) to hear constitutionally core claims to final judgment, subject to appeal in the district court, and (2) to recommend findings of fact and conclusions of law to the district court in constitutionally non-core matters for de novo review and final judgment by the district court. See Exec. Benefits, 134 S. Ct. at 2171-72, 2175. Indeed, in Stern, the Court observed that § 157 is little more than a traffic regulator, directing where adjudication of bankruptcy matters can take place, and that it does not implicate subject matter jurisdiction. 131 S. Ct. at 2607. As the Court stated:

> Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district

> court.    That allocation does not implicate questions
> of subject matter jurisdiction.

Id. (emphasis added) (citation omitted); see also Home Ins. Co.
of Ill. v. Adco Oil Co., 154 F.3d 739, 742 (7th Cir. 1998) ("[A]
judge's failure to follow orderly procedures [under § 157] for
allocating bankruptcy matters within a district court does not
deprive the court of subject-matter jurisdiction").   Consistent
with its ruling, the Stern Court held that because the
provisions of § 157 were not jurisdictional, their proscriptions
could be waived.   131 S. Ct. at 2607-08.

In the same vein, the fact that litigants may consent to a
bankruptcy court's adjudication of a non-core proceeding also
indicates that § 157 is not jurisdictional.   See 28 U.S.C.
§ 157(c)(2) (permitting bankruptcy courts to adjudicate
statutorily non-core proceedings with the parties' consent);
Wellness, 135 S. Ct. at 1939 (holding that bankruptcy courts
may, with the parties' knowing and voluntary consent, adjudicate
Stern claims -- i.e., statutorily core but constitutionally non-
core proceedings).

Thus, even if Houck's § 362(k) claim was indeed subject to
the Western District of North Carolina's standing order
referring "all bankruptcy matters" to the bankruptcy court, the
district court's failure to follow the procedural rule did not
deprive it of subject matter jurisdiction.   The district court

always had original jurisdiction over any bankruptcy matter, and any breach of § 157 would "not implicate questions of subject matter jurisdiction." Stern, 131 S. Ct. at 2607; see also Home Ins. Co., 154 F.3d at 742. While it may be that the district court should have sent Houck's § 362(k) claim to the bankruptcy court in accordance with its standing order, the amicus has failed to explain how not doing so deprived the district court of the original jurisdiction that Congress bestowed upon it by way of § 1334. See Justice Cometh, 426 F.3d at 1343 (stating that, although the district courts may refer to the bankruptcy courts proceedings arising under Title 11, "the explicit § 1334 grant of original jurisdiction over Title 11 cases clearly forecloses a conclusion that the district court[s] lack[] subject matter jurisdiction over [§ 362(k) claims]"); Price, 947 F.2d at 832 n.1 (observing that the plaintiff's claim for willful violation of the automatic stay "should probably have been referred to the bankruptcy court under [the district court's standing order of reference]," but deciding that "the defect [was] not jurisdictional").

Moreover, neither Houck nor the Substitute Trustee objected to the district court's failure to refer this case to the bankruptcy court. Accordingly, any claim that the case should have been tried in the bankruptcy court was waived or forfeited. See Stern, 131 S. Ct. at 2607-08 (holding that the failure to

21

raise the statutory limitations of § 157 amounted to a waiver or forfeiture); Home Ins. Co., 154 F.3d at 742 (finding that the district court had committed no reversible error in failing to refer the matter to the bankruptcy court because, in part, neither of the parties challenged the district court's decision to hear the case).

At bottom, we hold that the district court had subject matter jurisdiction over Houck's § 362(k) claim and therefore that the court had authority to rule on the Substitute Trustee's motion to dismiss Houck's claims against it, to which we now turn.

IV

On the merits, Houck contends that the district court erred in dismissing, under Federal Rule of Civil Procedure 12(b)(6), her § 362(k) claim against the Substitute Trustee, arguing that the court applied the wrong legal standard and that her complaint was legally sufficient under the proper standard.

In dismissing her claim, the district court applied the standard: "[I]f after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a more likely cause of the complained of behavior, the claim for relief is not plausible." (Citation and internal quotation marks omitted). The court then found that the

22

complaint was "replete with generalized and conclusory allegations that the [foreclosure] sale was 'improper' or 'conducted improperly'" and that "[t]he only specific factual allegation against [the Substitute Trustee was] that it conducted the foreclosure sale in violation of the bankruptcy stay." More specifically, the court focused on the elements of a § 362(k) claim and noted that Houck had "failed to allege that [she] sent notice of the second [bankruptcy] petition to [the Substitute Trustee] or that [the Substitute Trustee] had any notice of the petition," thus precluding any allegation of willfulness.

Houck argues that the district court improperly created a balancing test for ruling on a Rule 12(b)(6) motion and that we should "summarily reject[]" it because "it has no legal basis and is logically unworkable." And as to the court's finding that the complaint was factually insufficient, she argues simply that the complaint did sufficiently allege that the Substitute Trustee had notice of her bankruptcy petition, pointing to numerous paragraphs in her complaint.

It is well established that a motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, see Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009), and that the legal sufficiency is determined by assessing whether the complaint contains sufficient facts, when accepted as true,

23

to "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard requires only that the complaint's factual allegations "be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In light of these well-established principles, we agree with Houck that the district court's articulated standard was erroneous. While the court correctly accepted the complaint's factual allegations as true, it incorrectly undertook to determine whether a lawful alternative explanation appeared more likely. To survive a motion to dismiss, a plaintiff need not demonstrate that her right to relief is probable or that alternative explanations are less likely; rather, she must merely advance her claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. If her explanation is plausible, her complaint survives a motion to dismiss under Rule 12(b)(6), regardless of whether there is a more plausible alternative explanation. The district court's inquiry into whether an alternative explanation was more probable undermined the well-established plausibility standard.

Turning to Houck's complaint, it sought to state a claim for relief under 11 U.S.C. § 362(k), which, as we have noted, creates a cause of action for an individual injured by a

24

violation of the automatic stay imposed by § 362(a). To recover under § 362(k), a plaintiff must show (1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was <u>willful</u>, and (3) that the plaintiff was injured by the violation. <u>See, e.g.</u>, <u>Garden v. Cent. Neb. Hous. Corp.</u>, 719 F.3d 899, 906 (8th Cir. 2013).

The district court acknowledged that Houck's complaint adequately alleged that the Substitute Trustee violated the stay imposed by § 362(a). But the court determined that the complaint insufficiently alleged that the Substitute Trustee had notice of Houck's second bankruptcy petition and thus acted willfully when it sold her homestead in foreclosure. The court did not address the Substitute Trustee's additional argument that the complaint also failed to allege adequately that Houck had been injured by the automatic-stay violation. Upon our examination of the complaint, however, we conclude that neither position can be sustained, as the complaint adequately alleged that the Substitute Trustee had notice of Houck's second bankruptcy petition and that Houck sustained injury as a result of the violation.

By way of background, the complaint alleged that LifeStore was Houck's lender; that Grid Financial was the collection agency for LifeStore; that the Substitute Trustee conducted the foreclosure sale on behalf of LifeStore and Grid Financial; and

25

that the Hutchens Law Firm represented these defendants in the foreclosure proceedings.

The complaint then alleged that on December 16, 2011, Houck filed a Chapter 13 bankruptcy petition "to stop the foreclosure and keep the homestead." Compl. ¶ 62. It alleged that in her bankruptcy petition, Houck "noticed LifeStore Bank," Compl. ¶ 64, and that, on the same day that Houck filed the petition, her husband "called [the Hutchens Law Firm] and notified them of the bankruptcy filing," Compl. ¶ 65. It detailed that call as follows:

> [Houck's husband] told the person who answered the phone that [Houck] had filed her bankruptcy petition. The person on the phone said, "Hold on." She then told him that she pulled up the file for Diana Houck and acknowledged that they had a file for her. [Houck's husband] gave her the new bankruptcy case number at that time. He mentioned that it was a new filing, filed that day. That was the end of the phone call.

Compl. ¶ 65. The complaint further alleged that on the same day that Houck filed the petition, her husband also "contacted LifeStore by telephone and spoke with Anne Jones." Compl. ¶ 66. And it also detailed that call as follows:

> He told her that [Houck] had filed a bankruptcy [petition] that day. Ms. Jones said that people often claim to have filed a bankruptcy without actually filing and that [LifeStore] intended to wait for the Court's notice, or words to that effect.

Compl. ¶ 66. The complaint further alleged that, "[u]pon information and belief[,] LifeStore received notice from the

26

AACER system of the bankruptcy filing on December 16, 2011, the date that [Houck] filed the petition." Compl. ¶ 67. Finally, it alleged that the defendants "were noticed of the second petition the same way they were under notice of the first petition." Compl. ¶ 69. Based on these allegations of notice, the complaint concluded that the defendants "violated 11 U.S.C. § 362 by intentionally and knowingly foreclosing on [Houck's] real property while they knew that [Houck] was under the protection of the automatic stay." Compl. ¶ 93 (emphasis added). It is difficult to imagine that a court could demand more specificity with respect to the allegations of notice than the details that Houck provided in her complaint.

With respect to the Substitute Trustee's argument that Houck failed to allege injury, the complaint is likewise adequately detailed. The complaint alleged that Houck's homestead was sold in violation of the automatic stay on December 20, 2011, to Fannie Mae, the insurer of LifeStore's loan, although the exhibits to the complaint show that it was "Life Store Bank c/o Grid Financial Services, Inc.," that purchased the property. Compl. ¶ 74 & Ex. K. The complaint further alleged that, "[u]pon information and belief, [Fannie Mae] returned the homestead to LifeStore," which "is presently attempting to develop the land for sale." Compl. ¶¶ 86-87.

27

Finally, with respect to how the violation of the stay injured her, the complaint alleged:

> Because [Houck] and [her husband] were forced to move from the homestead to a smaller cabin, they suffered unreasonable loss including but not limited to:
>
> a) Loss of the rental income from the smaller cabin as [Houck] and [her husband] were forced to move into the cabin.
>
> b) Loss of [Houck's] grandmother's antiques as there was nowhere to store them.
>
> c) Loss of value of four collector cars as they are no longer being stored in a garage.
>
> d) Loss of income from [Houck's] produce stand.
>
> e) Loss of barn where [Houck] kept farm equipment and vegetables prior to sale.
>
> f) Loss of furniture because of smaller space.
>
> g) Loss of all of their seasonal clothing because of loss of storage space.
>
> h) Lost all of their sentimental possessions because of loss of storage space.
>
> i) Emotional injury.

Compl. ¶ 89.

In sum, we conclude that the complaint alleged facts that more than adequately support Houck's claims (1) that she gave the defendants, including the Substitute Trustee through its attorneys, notice of her December 16, 2011 bankruptcy filing and

28

(2) that as a result of the defendants' violation of the stay, she was injured.

Rather than address Houck's factual allegations in any detail, the Substitute Trustee argues that Houck failed to allege that she provided it with notice of her bankruptcy petition in writing, which, it argues, she was required to do under 11 U.S.C. § 342(c)(1) ("If notice is required to be given by the debtor to a creditor . . . , such notice shall contain the name, address, and last 4 digits of the [social security] number of the debtor"). The Substitute Trustee reasons that, because it did not receive such written notice before it sold Houck's homestead, it could not have willfully violated the automatic stay. This argument, however, distorts the requirements of § 362(k), which does not include any provision that a particular form of notice be given. Rather, it imposes liability for a willful violation of the automatic stay. We agree with Houck that, because the complaint alleges that the Substitute Trustee had actual notice of her December 16, 2011 bankruptcy petition when it sold her homestead, it sufficiently alleges that the Substitute Trustee's sale of her homestead on December 20 with such notice was willful. See Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.02, at 362-21 (16th ed. 2011) ("A party that has received notice of the bankruptcy case, even if only oral notice, can be sanctioned for

29

violation of the stay"); see also ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996, 1008 (9th Cir. 2006) ("'[A] party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay' for purposes of awarding damages under [§ 362(k)]" (quoting Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003))).

At bottom, we conclude that Houck stated a plausible claim for relief under § 362(k).

V

As an alternative ground for dismissal of Houck's claims, the Substitute Trustee contends that Houck was not an "eligible debtor" when she filed her second bankruptcy petition within 180 days of her first petition and therefore that the second petition, filed on December 16, 2011, did not automatically trigger the stay under § 362(a).

It is true that even though the automatic stay generally operates "without the necessity for judicial intervention," Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir. 1994), certain filings do not trigger the stay. For example, a filing under 11 U.S.C. § 301, like Houck's Chapter 13 petitions, does not operate as a stay "of any act to enforce any lien against or security interest in real property . . . if the debtor is ineligible under [11 U.S.C. §] 109(g) to be a debtor in a case

30

under [Title 11]." 11 U.S.C. § 362(b)(21)(A). Section 109(g)

in turn provides in relevant part:

> Notwithstanding any other provision of this section,
> no individual . . . may be a debtor under this title
> who has been a debtor in a case pending under this
> title at any time in the preceding 180 days if --
>
> > (1) the case was dismissed by the court for
> > willful failure of the debtor to abide
> > by orders of the court, or to appear
> > before the court in proper prosecution
> > of the case . . . .

The 180-day filing ban is "an extraordinary statutory remedy for

perceived abuses of the [Bankruptcy] Code." Frieouf v. United

States (In re Frieouf), 938 F.2d 1099, 1104 (10th Cir. 1991)

(second emphasis added) (citation and internal quotation marks

omitted).

  While Houck's second bankruptcy petition was filed within

180 days after the dismissal of her first petition, the

Substitute Trustee has not shown that the first petition was

dismissed because Houck willfully failed to abide by the

bankruptcy court's orders or to appear in proper prosecution of

her case. Indeed, the record shows to the contrary. The

bankruptcy court dismissed Houck's first petition, which she

filed pro se, because she "failed to file certain schedules,

statements, or other documents." It made no mention of Houck's

failure being willful -- i.e., knowing and deliberate. And

tellingly, the bankruptcy court did not dismiss her case with

prejudice, which bankruptcy courts "frequently" do when imposing the 180-day filing ban authorized by § 109(g). See <u>Colonial Auto Ctr. v. Tomlin (In re Tomlin)</u>, 105 F.3d 933, 937 (4th Cir. 1997).

Moreover, when Houck filed her second petition within 180 days of her first petition's dismissal, no party to the second petition questioned whether Houck was an eligible debtor. Similarly, when the bankruptcy court ultimately dismissed Houck's second petition, it did so because she failed to satisfy § 109(h)(1)'s credit-counseling requirement, not because she failed to qualify as a debtor pursuant to § 109(g)(1).

Whether Houck was an eligible debtor when she filed her second petition is a fact-bound question that requires evidentiary support. Finding no such evidence in the record, we reject the Substitute Trustee's alternative ground for dismissal.

VI

Based on its conclusion that Houck's allegations were insufficient to state a claim under § 362(k), the district court also concluded that her "state law claims fail as well." Because the court predicated its dismissal of the state law claims on a finding that we now reverse, we vacate its order dismissing those claims as well. In remanding them to the

32

district court, however, we express no opinion as to their merit.

*    *    *

The judgment of the district court is vacated; the court's October 1, 2013 order dismissing Houck's § 362(k) claim against the Substitute Trustee is reversed; and the case is remanded for further proceedings.

<u>VACATED, REVERSED IN PART, AND REMANDED</u>