RECORD NO. _____

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

IN RE DIANA LOUISE HOUCK

*Petitioner.*

## APPENDIX

**PETITION FOR WRIT OF MANDAMUS
ON BEHALF OF DIANA LOUISE HOUCK**

**M. Shane Perry - NC Bar No. 35498
COLLUM & PERRY
109 W. Statesville Ave.
Mooresville, NC 28115
P: 704-663-4187
F: 704-663-4178
shane@collumperry.com**

**Counsel for Petitioner**

# TABLE OF CONTENTS

Page

Order of Referral to the Bankruptcy Court, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Sept. 23, 2015) (Doc. 92)……………………….......................1

Notice of Status Hearing, *Diana Houck, et al. v. Lifestore Bank, et al*. Adversary No. 15-05028 (W.D.N.C. Bankr., Sept. 29, 2015) (Doc. 2)..………………………...2

Order Requiring Briefing on Questions of Status, Jurisdiction and Preemption, *Diana Houck, et al. v. Lifestore Bank, et al*. Adversary No. 15-05028 (W.D.N.C. Bankr., Nov. 3, 2015) (Doc. 5)..……………..………………………………....…..3

Preliminary Memorandum of Law, *Diana Houck, et al. v. Lifestore Bank, et al*. Adversary No. 15-05028 (W.D.N.C. Bankr., Nov. 24, 2015) (Doc. 7)...……...…..11

Motion to Withdraw Referral, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Dec. 22, 2015) (Doc. 93, 93-1)..……………………………....…….15

Memorandum of Law in Support of Motion to Withdraw Referral, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Dec. 22, 2015) (Doc. 93-1)..……………………………………………………………..…....…..17

Memorandum of Law, *Diana Houck, et al. v. Lifestore Bank, et al*. Adversay No. 15-05028 (W.D.N.C. Bankr., Jan. 14, 2015) (Doc. 5)…..…………...............…… 22

Order Staying Adversary Proceeding, *Diana Houck, et al. v. Lifestore Bank, et al*. Adversary No. 15-05028 (W.D.N.C. Bankr., Feb. 1, 2015) (Doc. 14)…………..…………………………………………………..…....49

Order, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Feb. 1, 2016) (Doc. 95) …………………………………………………………………....51

Motion for Certification for Interlocutory Appeal, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Feb. 2, 2016) (Doc. 96)..………………………....52

Memorandum of Law in Support of Motion for Certification for Interlocutory Appeal, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Feb. 2, 2016) (Doc. 96-1)..……......................................……………….…..54

i

Response in Opposition to Motion for Certification of Interlocutory Appeal and to Stay Proceedings, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Feb.19, 2016) (Doc. 97)…………………………………………………...……....58

Exhibit (Doc. 97-1)………...…………………………...………….....……..62

Order, *Houck v. Lifestore Bank., et al*., 5:13-CV-66 (W.D.N.C., Mar. 1, 2016) (Doc. 95)......................................................................................................73

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO: 5:13-CV-66-DSC**

| | |
|---|---|
| DIANA LOUISE HOUCK, et. al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LIFESTORE BANK, et. al., | ) |
| | ) |
| Defendants. | ) |

**ORDER OF REFERRAL TO THE BANKRUPTCY COURT**

**THIS MATTER** is before the Court <u>sua sponte</u> following remand from the United States Court of Appeals for the Fourth Circuit.

The case centers on Plaintiff's cause of action under 11 U.S.C. § 362(k) for violation of an automatic stay.

Pursuant to 11 U.S.C. § 157(a), the Court's "Amended Standing Order of Reference" 3:14-MC-44, and the Fourth Circuit's opinion in this case, <u>see</u> Document #83, this Court refers this case to the Bankruptcy Court for recommended findings of fact and conclusions of law. <u>Stern v. Marshall</u>, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2594, 2618, 180 L.Ed.2d 475 (2011).

The Clerk is directed to send copies of this Order to the parties' counsel, the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, and to <u>the Honorable Laura T. Beyer, Chief Judge of the United States Bankruptcy Court for the Western District of North Carolina</u>.

**SO ORDERED**.

Signed: September 22, 2015

David S. Cayer
United States Magistrate Judge



**UNITED STATES BANKRUPTCY COURT**
**Western District of North Carolina**
**Statesville Division**

Adversary No.: 15–05028

---

IN THE MATTER OF:

     Debtor(s)

Case No.:
Chapter:

---

Diana Houck et al.
     Plaintiff(s)

vs.

Lifestore Bank et al.
     Defendant(s)

---

# NOTICE OF STATUS HEARING

**NOTICE IS HEREBY GIVEN** that the court will conduct a status hearing on 10/28/15 at 11:00 AM at Charles R. Jonas Federal Building, 401 West Trade Street, Courtroom 1–5, Charlotte, NC 28202.

Dated: September 29, 2015

                                          Steven T. Salata
                                          Clerk of Court

Electronically filed and signed (9/29/15)

Appeal: 16-1369      Doc: 3-2      Filed: 03/15/2016      Pg: 6 of 76

```
FILED & JUDGMENT ENTERED
       Steven T. Salata

        Nov  03  2015

    Clerk, U.S. Bankruptcy Court
  Western District of North Carolina
```

_Laura T Beyer_
_____
Laura T. Beyer
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **DIANA HOUCK,** | ) | Chapter 13 |
| | ) | Case No. 11-51513 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **DIANA HOUCK and STEVEN G TATE,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 15-5028 |
| | ) | |
| **LIFESTORE BANK, GRID FINANCIAL** | ) | |
| **SERVICES, INC., and SUBSTITUTE** | ) | |
| **TRUSTEE SERVICES, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER REQUIRING BRIEFING ON QUESTIONS OF STATUS, JURISDICTION, AND PREEMPTION

**THIS MATTER** is before the court on its own September 29, 2015 Notice of Status Hearing ("Notice"). The court held the status hearing set by the Notice on October 28, 2015, and attorneys for Diana Houck ("Houck"), Lifestore Bank ("Lifestore"), Grid Financial Services, Inc. ("Grid"), and

Substitute Trustee Services, Inc. ("STS") attended the status hearing.[1]

The following briefly summarizes the circuitous route this lawsuit took before arriving in this court: Houck commenced the lawsuit by filing a complaint in the United States District Court for the Western District of North Carolina on April 26, 2013. The complaint, as subsequently amended, alleges that the Defendants violated the automatic stay of 11 U.S.C. § 362 by conducting a foreclosure sale during Houck's bankruptcy case as well as a number of state law claims based on the violation of the stay and an alleged conspiracy among the Defendants to cause Houck to default on her mortgage payments. The parties agreed to consent to the jurisdiction of a magistrate judge for any and all proceedings in their July 12, 2013 Joint Stipulation of Consent to Exercise Jurisdiction by a United States Magistrate Judge, and the District Court assigned the case to the Honorable David S. Cayer. After Judge Cayer dismissed parts of the complaint on the Defendants' various motions, Houck v. Lifestore Bank, No. 5:13-CV-66 (W.D.N.C. Oct. 1, 2013) (memorandum and order dismissing all claims against STS) ("October 1 order"); Houck v. Lifestore Bank, No. 5:13-CV-66 (W.D.N.C. Jan. 15, 2014) (memorandum and order granting in part and denying in part

---

[1] Plaintiff Steven G Tate ("Tate"), the Chapter 13 trustee in Houck's base bankruptcy case, was not represented at the status hearing. While the amended complaints are signed by M. Shane Perry ("Perry") as "Attorney for Plaintiffs," Perry told the court at the status hearing that he had not been retained to represent Tate.

motions to dismiss filed by Lifestore and Grid), he granted Grid's Motion to Dismiss for Lack of Subject Matter Jurisdiction on February 20, 2014 and dismissed the remaining claims, <u>Houck v. Lifestore Bank</u>, No. 5:13-CV-66 (W.D.N.C. Feb. 20, 2014) ("February 20 order").

Houck appealed to the United States Court of Appeals for the Fourth Circuit, but the appeal to the Fourth Circuit did not follow the normal route. Houck had previously appealed Judge Cayer's October 1 order that dismissed STS and did not appeal the February 20 order that dismissed the remaining claims as to the remaining Plaintiffs. On August 27, 2014, the Fourth Circuit entered an unpublished, per curiam opinion that concluded that the October 1 order was not a final order or an appealable interlocutory order. <u>Houck v. Substitute Tr. Servs., Inc.</u>, No. 13-2326, 582 Fed. Appx. 230 (4th Cir. Aug. 27, 2014). After Judge Cayer denied Houck's motions to reopen the District Court proceedings and to reconsider the February 20 order, the Fourth Circuit granted rehearing of the appeal of the October 1 order. On July 1, 2015, the Fourth Circuit vacated the judgment of the District Court, reversed the October 1 order, and remanded the matter to the District Court. <u>Houck v. Substitute Tr. Servs., Inc.</u>, 791 F.3d 473, 487 (4th Cir. 2015) ("July 1 opinion"). While only the October 1 order was appealed to the Fourth Circuit, the only parties to the appeal were Houck and

3

STS, and the parties are not in complete agreement as to the scope of the July 1 opinion, it is clear that the Fourth Circuit saw fit to review more than just the October 1 order. For example, the July 1 opinion concludes that 11 U.S.C. § 362(k) creates a private cause of action, and the private cause of action argument was not a part of the October 1 order, but it was part of the February 20 order.[2]    Similarly, the Fourth Circuit vacated the "judgment" of the District Court, and the only judgment that was entered in the District Court proceedings was the February 20, 2014 judgment that accompanied the February 20 order.    The July 1 opinion also mentions that a § 362(k) claim could be referred to the bankruptcy court, and, on remand, Judge Cayer entered an Order of Referral to the Bankruptcy Court on September 23, 2015.    This court subsequently entered the Notice setting the status hearing.

At the status hearing, the parties appeared to be ready to pick up the proceedings where they left off in front of Judge Cayer, but they also agreed that the appeal and the referral to this court raised procedural and jurisdictional questions, and the court believes a wiser course of action may be to try to determine exactly where things stand before moving forward.

---

[2] While Grid's Motion to Dismiss for Lack of Subject Matter Jurisdiction does argue that there is no private cause of action under § 362(k), the February 20 order actually concludes that dismissal of the § 362 claim is the "appropriate remedy" because Houck's base bankruptcy case had previously been dismissed by this court.    The Fourth Circuit did not directly address Judge Cayer's conclusion in the July 1 opinion.

When Judge Cayer referred this matter to this court, there were two motions pending: a Consent Motion to Amend Scheduling Order filed on September 8, 2015 ("Scheduling Motion"), and Grid's September 9, 2015 Status Report and Suggestion of Unresolved Dispositive Motion ("Suggestion"). The Scheduling Motion would set a schedule for discovery and dispositive motions in anticipation of a trial in September 2016.[3] The Suggestion alerts the court that there is an unresolved dispositive issue from Grid's Motion to Dismiss for Lack of Subject Matter Jurisdiction of whether the court should decline to retain supplemental jurisdiction over the state law claims asserted in the complaint. The court believes general procedural and jurisdictional issues raised by this adversary proceeding should be addressed prior to setting discovery in motion or addressing Grid's Suggestion.

To that end, the court orders the parties to brief the following issues by January 14, 2016[4] in anticipation of a continued status hearing on January 29, 2016:

(1) **What is the status of the complaint in the wake of the July 1 opinion?** For example, since the July 1 opinion vacated the judgment and called some of the

---

[3] At the status hearing, the parties announced that they had agreed to extend all of the deadlines in the Scheduling Motion by one month.

[4] At the status hearing, the parties raised the possibility of a consensual dismissal of the state law claims, and the court indicated it would consider a consent order in that regard. To the extent that claims are dismissed prior to January 14, 2016, they (and any issues they raise that are not raised by the remaining active claims) do not need to be briefed.

5

conclusions of the October 1 order into question, did
the July 1 opinion more or less restart this lawsuit
from the beginning, with all of the claims against all
of the Defendants reinstated?  At the other end of the
spectrum, since the earlier orders dismissing various
claims and parties were not appealed, did the July 1
opinion only reinstate the claims against STS and
leave the February 20 order dismissing Lifestore and
Grid undisturbed?  Is the status of the complaint
somewhere between the two extremes, with some claims
dismissed and others reinstated against all of the
Defendants?

(2)  **Are there issues of subject matter jurisdiction or
judicial authority that would impact this court's
adjudication of this lawsuit?**  Bankruptcy courts, like
federal district courts, are courts of limited
jurisdiction, Canal Corp. v. Finnman (In re Johnson),
960 F.2d 396, 399 (4th Cir. 1992), and the
constitutional authority of bankruptcy courts under
Article I of the United States Constitution has
recently been called into question, In re Marko, No.
11-31287, slip op. at 6 (Bankr. W.D.N.C. Mar. 11,
2014) (citing Exec. Benefits Ins. Agency v. Arkison,
134 S. Ct. 810 (2013)).  In addition, the current

status of Houck's base bankruptcy case raises issues regarding this court's authority to hear this adversary proceeding. [5] Questions about the court's jurisdiction and authority include: Can this court exercise supplemental jurisdiction to hear Houck's state law claims? Can this bankruptcy court hear the state law claims pursuant to 28 U.S.C. § 1334?[6] If the court can hear the state law claims, are they Stern claims that would limit the court to a recommended order (in the absence of the parties' consent)? See Stern v. Marshall, 131 S. Ct. 2594, 2608 (2011) (holding that bankruptcy courts lack constitutional authority to enter final orders on certain counterclaims by debtors); see also Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1949 (2015) (holding that parties could consent to bankruptcy court adjudication of Stern claims). Finally, can this court hear this complaint when the related base bankruptcy case is closed and dismissed?

---

[5] Houck filed Chapter 13 case no. 11-51513 on December 16, 2011. The court dismissed the case on December 21, 2011 due to Houck's failure to satisfy the pre-petition credit counseling requirement of 11 U.S.C. § 109(h)(1), and the case was closed on January 31, 2012. The status of the base bankruptcy case has not changed since January 31, 2012.

[6] Bankruptcy courts acquire subject matter jurisdiction from § 1334, which allows bankruptcy courts (through reference from district courts) to hear matters (1) arising under title 11, (2) arising in title 11, or (3) related to cases under title 11. Gaitor v. U.S. Bank, Nat. Ass'n (In re Gaitor), Nos. 14-9059 & 13-80530, 2015 WL 4611183, at *5 (Bankr. M.D.N.C. July 31, 2015).

(3) **Are the state law claims preempted by § 362?** [7]    <u>See</u>
<u>Gaitor v. U.S. Bank, Nat. Ass'n (In re Gaitor)</u>, Nos.
14–9059 & 13–80530, 2015 WL 4611183, at *2—5 (Bankr.
M.D.N.C. July 31, 2015).

Accordingly, the parties to this adversary proceeding are
hereby **ORDERED TO FILE BRIEFS** addressing the issues raised in
this order by the close of business on January 14, 2016, and the
status hearing is hereby **CONTINUED** to 9:30 a.m. on January 29,
2016.

**SO ORDERED.**

This Order has been signed                United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

---

[7] While preemption is not technically an issue of procedure or jurisdiction,
the issue was raised at the status hearing and is related to the other issues
that the court is asking the parties to brief.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | |
|---|---|
| In re: | Chapter: |
| **Debtor** | Case No: |
| **DIANA HOUCK and STEVEN G. TATE,**<br>**Trustee** | |
| **Plaintiffs.** | |
| v. | **Adversary Proceeding**<br>**No. 15-5028** |
| **LIFESTORE BANK, GRID FINANCIAL** )<br>**SERVICES, INC., and SUBSTITUTE** )<br>**TRUSTEE SERVICES, INC.,** | |
| **Defendants.** | |

**COME NOW**, Plaintiffs, by and through counsel, and pursuant to the Order of this Court dated November 3, 2015, hereby present this **PRELIMINARY MEMORANDUM OF LAW** and offer the following answer to the questions presented by the Court:

Before the Parties delve too deeply into research and writing, it is the hope of the Plaintiffs that we may forestall extra work and expense by all parties involved. To that end, the Plaintiffs offer this Preliminary Brief to provide instructive law on the status of this case. Should the Court find that there is no jurisdiction, it might move *sua sponte* prior to the January 16, 2016, deadline for the briefs requested in the November 3 Order. If not, the Plaintiffs will submit the full brief by the deadline.

The Court asked in its Order several questions about jurisdiction, which is a subject that forecloses any further consideration of any matter. It is the *sine qua non* of our presence in bankruptcy court. The most important question asked by this Court was, "Finally, can this court hear this complaint when the related base bankruptcy case is closed and dismissed?" *Houck v.*

*Lifestore Bank*, Case No. 15-05028, Order Requiring Briefing on Questions of Status, Jurisdiction and Preemption (Doc 5) (Filed Nov. 3, 2015, Bankr. W.D.N.C). The answer to that question is no and it obviates the need for further analysis. But more specifically, the answer is no because there is no related bankruptcy case.

The reason there is no jurisdiction here is because there is no base case to which this adversary proceeding can relate. Jurisdiction for any action in bankruptcy court is fundamentally related to a base bankruptcy case. See 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. There has never been a bankruptcy case in this lawsuit (see *Houck v. Lifestore, et al*., Case 1:13-CV-00120 (Filed Apr. 26, 2013, W.D.N.C.)), which began properly in federal district court (see *Houck v. Substitute Trustee Servs*., 791 F.3d 473 (4th Cir. N.C. 2015)) and was improperly referred to this court by the federal Magistrate. See *Houck v. Lifestore Bank, et al*., Case 5:13-CV-00066, Order of Referral to the Bankruptcy Court (Doc 92) (Filed September 23, 2015).

Moreover, without a bankruptcy case, the claims in this case could never be "core matters" pursuant to *Stern v. Marshall*, 564 U.S. 2 (2011) and *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014).

The Fourth Circuit has pursued this question and developed an answer to the questions before this Court:

> This court has adopted the *Pacor* related to test and has held that a district court, "and derivatively the Bankruptcy court" has jurisdiction over an action related to a bankruptcy case "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." *Spartan Mills v. Bank of Am. Ill*., 112 F.3d 1251, 1255-56 (4th Cir.), *cert. denied*, 522 U.S. 969, 139 L. Ed. 2d 319, 118 S. Ct. 417 (1997) (quoting *Pacor*, 743 F.2d at 994 (internal quotation marks omitted)). The Supreme Court gave the following as an example of a civil case related to a bankruptcy case: "suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 307 n.5 (citing 1 *Collier on Bankruptcy* P 3.01[1][c][iv] at 3-28 (15th ed. 1994)). Notably, as is the case here, a related to

case need not necessarily be against the debtor or his property. Nevertheless, the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." *Pacor*, 743 F.2d at 994. In this circuit, a civil case is related to bankruptcy if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor*, 743 F.2d at 994), see also *A. H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986).

*New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. N.C. 2000). As there is no base case and therefore no estate, there is no possibility that the outcome of the proceeding could alter Diana Houck's rights as a bankruptcy Debtor or the administration of any estate. This is not "an action related to a bankruptcy case." *Id.* It is simply an action. While there are common issues of fact between the federal lawsuit and Diana's past bankruptcy filing, 28 U.S.C. § 1334(b) does not send this case to bankruptcy court. Without an estate, this civil suit can have no conceivable effect on any estate. Therefore, this Court has no jurisdiction over any part of the lawsuit that was filed in federal district court and the referral should be withdrawn.


**WHEREFORE**, the Plaintiffs in this case request that this Court file with the district court findings of fact and conclusion of law which demonstrate that this Court cannot hear this case for lack of jurisdiction; therefore, the referral must be withdrawn.

**TODAY** is November 24, 2015.

**COLLUM & PERRY**

*/s/ M. Shane Perry*

M. Shane Perry
N.C. Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
P: 704-663-4187
shane@collumperry.com
Attorney for Plaintiffs

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| In re: | Chapter: |
| **Debtor** | **Case No:** |
| **DIANA HOUCK and STEVEN G. TATE, Trustee** | |
| **Plaintiffs.** | |
| **v.** | **Adversary Proceeding No. 15-5028** |
| **LIFESTORE BANK, GRID FINANCIAL ) SERVICES, INC., and SUBSTITUTE ) TRUSTEE SERVICES, INC.,** | |
| **Defendants.** | |

### CERTIFICATE OF SERVICE

I, M. Shane Perry, do hereby certify that the foregoing **PRELIMINARY MEMORANDUM OF LAW** in this action, was served electronically through the CM/ECF system to:

| **LifeStore Bank, FSA** | **Grid Financial Services, Inc.** | **Substitute Trustee Services, Inc.** |
|---|---|---|
| c/o Amy C. Brodland | c/o Robert Mays | c/o Jeffrey Bunda |
| Reeves Law Firm | Van Winkle Law firm | Hutchens Law Firm |
| 202 East Main St. | 11 North Market Street, | 6230 Fairview Road, Suite 315 |
| West Jefferson, NC 28694 | Asheville, NC 28801 | Charlotte, NC 28210 |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |

**TODAY** is November 24, 2015.

By:     **/s/ M. Shane Perry**
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile:  704-663-4178
shane@collumperry.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

| | |
|---|---|
| **DIANA LOUISE HOUCK and STEVEN G. TATE, CHAPTER 13 TRUSTEE** | |
| **PLAINTIFFS** | |
| **V.** | **MOTION TO WITHDRAW REFERRAL** |
| **LIFESTORE BANK, F.S.A., GRID FINANCIAL SERVICES, INC., and SUBSTITUTE TRUSTEE SERVICES, INC.** | |
| **DEFENDANTS** | |

**COMES NOW** Plaintiff, by and through counsel, and pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. N.C. 2000), respectfully prays of this Court to withdraw the Order of Referral entered September 22, 2015.

    The Plaintiff will file with this motion a memorandum of law in support of this motion.

**TODAY** is December 22, 2015.

    Respectfully submitted by,

                        **COLLUM & PERRY**

                         */s/ M. Shane Perry*
                        Attorney for Plaintiffs
                        NC Bar No. 35498
                        Collum & Perry
                        109 W. Statesville Ave.
                        Mooresville, NC 28115
                        P: 704-663-4187
                        F: 704-663-4178
                        shane@collumperry.com

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**File No. 5:13-CV-66**

| | |
|---|---|
| DIANA LOUISE HOUCK | |
| **PLAINTIFF** | |
| **V.** | **MOTION** |
| | **TO WITHDRAW REFERRAL** |
| **LIFESTORE BANK, F.S.A., GRID** | |
| **FINANCIAL SERVICES, INC., and** | |
| **SUBSTITUTE TRUSTEE SERVICES, INC.** | |
| **DEFENDANTS** | |

## CERTIFICATE OF SERVICE

I, M. Shane Perry, do hereby certify that the foregoing **MOTION TO WITHDRAW REFERRAL** in this case, was served electronically through the CM/ECF system to:

| **LifeStore Bank, FSA** | **Grid Financial Services, Inc.** | **Substitute Trustee Services, Inc.** |
|---|---|---|
| c/o Amy C. Brodland | c/o Robert Mays | c/o Jeffrey Bunda |
| Reeves Law Firm | Van Winkle Law firm | Hutchens Law Firm |
| 202 East Main St. | 11 North Market Street, | 6230 Fairview Road, Suite 315 |
| West Jefferson, NC 28694 | Asheville, NC 28801 | Charlotte, NC 28210 |
| amy@reeveslawfirm.net | rmays@vwlawfirm.com | jeff.bunda@hutchenslawfirm.com |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |

**TODAY** is December 22, 2015.

Respectfully submitted by,

**COLLUM & PERRY**

*/s/ M. Shane Perry*
Attorney for Plaintiffs
NC Bar No. 35498
Collum & Perry
109 W. Statesville Ave.
Mooresville, NC 28115
P: 704-663-4187
F: 704-663-4178
shane@collumperry.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

DIANA LOUISE HOUCK and STEVEN G.
TATE, CHAPTER 13 TRUSTEE

                    PLAINTIFFS

        V.                                      BRIEF ON MOTION
                                            TO WITHDRAW REFERRAL
LIFESTORE BANK, F.S.A., GRID
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES, INC.

                    DEFENDANTS

**COMES NOW**, Plaintiff, by and through counsel, and hereby presents this **Brief in Support of**

**Motion** to the Court:

On September 22, 2015, this Court entered an order referring this case to the United States

Bankruptcy Court for the Western district of North Carolina. The Order stated:

> Pursuant to 11 U.S.C. § 157(a), the Court's "Amended Standing Order of
> Reference" 3:14-MC-44, and the Fourth Circuit's opinion in this case, see
> Document #83, this Court refers this case to the Bankruptcy Court for
> recommended findings of fact and conclusions of law. *Stern v. Marshall*, ––– U.S.
> –––, 131 S.Ct. 2594, 2618, 180 L.Ed.2d 475 (2011).

*Houck v. Lifestore Bank, et al*, Case No. 5:13-CV-66, Order of Referral to the Bankruptcy Court

(Doc 92) (Filed Sep. 22, 2015, W.D.N.C).

Subsequent to this Court's Order, and as a preliminary matter, on November 3, 2015, the

Bankruptcy Court requested a brief to be filed by January 16, 2016, on several key issues in this

matter, especially those regarding jurisdiction. The Order specifically asks, "Finally, can this

court hear this complaint when the related base bankruptcy case is closed and dismissed?" *Houck*

*v. Lifestore Bank*, Case No. 15-05028, Order Requiring Briefing on Questions of Status,

Jurisdiction and Preemption (Doc 5) (Filed Nov. 3, 2015, Bankr. W.D.N.C). This question was raised by the Court after a Status Hearing on October 28, 2015.

All Parties conferred on the matter and the Plaintiff believes that the Bankruptcy Court lacks jurisdiction to hear this matter. The defendants will file separate briefs on this issue. The deficiency is that there is no base case to which an adversary proceeding can relate.

Jurisdiction for any action in bankruptcy court is fundamentally related to a base bankruptcy case. See 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. There has never been a bankruptcy case in the case *sub judice* (see *Houck v. Lifestore, et al*., Case 1:13-CV-00120 (Filed Apr. 26, 2013, W.D.N.C.)), which began properly in this Court (see *Houck v. Substitute Trustee Servs*., 791 F.3d 473 (4th Cir. N.C. 2015)) and was referred to the Bankruptcy Court. See *Houck v. Lifestore Bank, et al*., Case 5:13-CV-66, Order of Referral to the Bankruptcy Court (Doc 92) (Filed Sep. 23, 2015).

Moreover, without a bankruptcy case, the claims in this case could never be "core matters" pursuant to *Stern v. Marshall*, 564 U.S. 2 (2011) and *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014).

The Fourth Circuit has pursued and answered the question before this Court:

> This court has adopted the *Pacor* related to test and has held that a district court, "and derivatively the Bankruptcy court" has jurisdiction over an action related to a bankruptcy case "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." *Spartan Mills v. Bank of Am. Ill*., 112 F.3d 1251, 1255-56 (4th Cir.), *cert. denied*, 522 U.S. 969, 139 L. Ed. 2d 319, 118 S. Ct. 417 (1997) (quoting *Pacor*, 743 F.2d at 994 (internal quotation marks omitted)). The Supreme Court gave the following as an example of a civil case related to a bankruptcy case: "suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 307 n.5 (citing 1 *Collier on Bankruptcy* P 3.01[1][c][iv] at 3-28 (15th ed. 1994)). Notably, as is the case here, a related to case need not necessarily be against the debtor or his property. Nevertheless, the "mere fact that there may be common issues of fact between a civil proceeding

and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." *Pacor*, 743 F.2d at 994. In this circuit, a civil case is related to bankruptcy if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor*, 743 F.2d at 994), see also *A. H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986).

*New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. N.C. 2000). As there is no base case and therefore no estate, there is no possibility that the outcome of the proceeding could alter Diana Houck's rights as a bankruptcy Debtor or the administration of any bankruptcy estate.

This is not "an action related to a bankruptcy case." *Id*. It is simply an action. It is not an adversary proceeding, because it was not filed in bankruptcy court with a base case. While there are common issues of fact between the federal lawsuit and Diana's past bankruptcy filing, 28 U.S.C. § 1334(b) does not send this case to bankruptcy court. The Fourth Circuit has addressed the process for determination of jurisdiction in a situation such as this:

> Whether a bankruptcy court may exercise subject matter jurisdiction over a proceeding is determined by reference to 28 U.S.C. § 1334. Only after jurisdiction is established pursuant to § 1334 is resort made to 28 U.S.C. § 157 to determine whether the proceeding is "core" or "noncore." Bankruptcy courts are authorized to enter appropriate judgments and orders in core proceedings, 28 U.S.C. § 157(b)(1), and may enter final orders in noncore related proceedings with the consent of all the parties. 28 U.S.C. § 157(c)(2). The determination that a claim is core or noncore is one that should not be reached, however, if subject matter jurisdiction does not exist. See *Abner v. Mate Creek Loading, Inc. (In re Mid-Atl. Res. Corp.)*, 283 B.R. 176, 186 (S.D.W.Va. 2002) ("[A]n assertion that the action is a core or noncore proceeding is not an allegation of federal jurisdiction; rather, it relates to the power of the bankruptcy court to resolve the issues brought before it after jurisdiction is established.").

*Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 839 n.3 (4th Cir. Va. 2007). The § 1334 analysis comes before the § 157 analysis and because there is no estate, there is no jurisdiction under the *Pacor* Test.

Without an estate, this civil suit can have no conceivable effect on any estate. Therefore, the Bankruptcy Court has no jurisdiction over any part of the lawsuit that was filed in federal district court and the referral should be withdrawn.

**WHEREFORE**, The Plaintiff in this case requests that this Court withdraw the referral entered on September 22, 2015.

**TODAY** is December 22, 2015.

Respectfully submitted by,

**COLLUM & PERRY**

*/s/ M. Shane Perry*
M. Shane Perry
NC Bar No. 35498
Collum & Perry
109 W. Statesville Ave.
Mooresville, NC 28115
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

DIANA LOUISE HOUCK and STEVEN G.
TATE, CHAPTER 13 TRUSTEE

                            PLAINTIFFS

            V.                                      BRIEF ON MOTION
                                                TO WITHDRAW REFERRAL
LIFESTORE BANK, F.S.A., GRID
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES, INC.

                            DEFENDANTS

## CERTIFICATE OF SERVICE

I, M. Shane Perry, do hereby certify that the foregoing **BRIEF ON MOTION TO WITHDRAW REFERRAL** in this case, was served electronically through the CM/ECF system to:

| **LifeStore Bank, FSA** | **Grid Financial Services, Inc.** | **Substitute Trustee Services, Inc.** |
|---|---|---|
| c/o Amy C. Brodland | c/o Robert Mays | c/o Jeffrey Bunda |
| Reeves Law Firm | Van Winkle Law firm | Hutchens Law Firm |
| 202 East Main St. | 11 North Market Street, | 6230 Fairview Road, Suite 315 |
| West Jefferson, NC 28694 | Asheville, NC 28801 | Charlotte, NC 28210 |
| amy@reeveslawfirm.net | rmays@vwlawfirm.com | jeff.bunda@hutchenslawfirm.com |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |

**TODAY** is December 22, 2015.

                            By:     **/s/ M. Shane Perry**
                                    Attorney for Plaintiffs
                                    NC Bar No. 35498
                                    109 W. Statesville Ave.
                                    Mooresville, NC 28115
                                    Telephone: 704-663-4187
                                    Facsimile:  704-663-4178
                                    shane@collumperry.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION

| | |
|---|---|
| **In re:** | **Chapter:** |
| **Debtor** | **Case No:** |
| | |
| **DIANA HOUCK and STEVEN G. TATE, Trustee** | |
| **Plaintiffs.** | |
| **v.** | **Adversary Proceeding No. 15-05028** |
| **LIFESTORE BANK, F.S.A.,  GRID FINANCIAL SERVICES, INC., and SUBSTITUTE TRUSTEE SERVICES, INC.,** | |
| **Defendants.** | |

### MEMORANDUM OF LAW

**COMES NOW**, Plaintiffs, by and through counsel on special appearance to dispute jurisdiction, and pursuant to the Order of this Court dated November 3, 2015, hereby presents this Memorandum of Law and offers the following answers to the questions presented by the Court:

The Honorable Judge Laura Beyer presented the following questions to the parties for discussion and determination of the status of this case and the controlling law:

1.  What is the status of the complaint in the wake of the July 1 opinion?

    a.  For example, since the July 1 opinion vacated the judgment and called some of the conclusions of the October 1 order into question, did the July 1 opinion more or less restart this lawsuit from the beginning, with all of the claims against all of the Defendants reinstated?
    b.  At the other end of the spectrum, since the earlier orders dismissing various claims and parties were not appealed, did the July 1 opinion only reinstate the claims against STS and leave the February 20 order dismissing Lifestore and Grid undisturbed?

    c. Is the status of the complaint somewhere between the two extremes, with some claims dismissed and others reinstated against all of the Defendants?

2. Are there issues of subject matter jurisdiction or judicial authority that would impact this court's adjudication of this lawsuit? Questions about the court's jurisdiction and authority include:
   a. Can this court exercise supplemental jurisdiction to hear Houck's state law claims?
   b. Can this bankruptcy court hear the state law claims pursuant to 28 U.S.C. § 1334?
   c. If the court can hear the state law claims, are they Stern claims that would limit the court to a recommended order (in the absence of the parties' consent)? See *Stern v. Marshall*, 131 S. Ct. 2594, 2608 (2011) (holding that bankruptcy courts lack constitutional authority to enter final orders on certain counterclaims by debtors); see also *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015) (holding that parties could consent to bankruptcy court adjudication of Stern claims).
   d. Finally, can this court hear this complaint when the related base bankruptcy case is closed and dismissed?

3. Are the state law claims preempted by § 362?

*Houck v. Lifestore Bank*, Case No. 15-05028, Order Requiring Briefing on Questions of Status, Jurisdiction and Preemption (Doc 5) (Filed Nov. 3, 2015, Bankr. W.D.N.C) (the questions have re-formatted for convenience of the brief). The Court also directed the Parties' attention to *Gaitor v. U.S. Bank, Nat. Ass'n (In re Gaitor)*, Nos. 14-9059 & 13-80530, 2015 WL 4611183 (Bankr. M.D.N.C. July 31, 2015), for analysis.

## **<u>JURISDICTION</u>**

As an initial matter, this Court has an obligation to examine its jurisdiction in this case:

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 7 Wall. 506, 514, 19 L. Ed. 264 (1869). "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Great Southern Fire Proof*

2

> *Hotel Co. v. Jones, supra,* 177 U.S. 449 at 453. The requirement that jurisdiction
> be established as a threshold matter "springs from the nature and limits of the
> judicial power of the United States" and is "inflexible and without exception."
> *Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 382, 28 L. Ed. 462, 4 S. Ct.
> 510 (1884).

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (U.S. 1998). *See*, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005). Jurisdiction in this Court must be addressed first and, if found lacking, all other issues before the Court become moot. "The court must evaluate each cause of action in the present adversary proceeding to determine whether it is a core proceeding." *Moses v. CashCall, Inc. (In re Moses)*, 2013 Bankr. LEXIS 10, 5-6 (Bankr. E.D.N.C. Jan. 3, 2013). Moreover, "subject matter jurisdiction cannot be conferred by agreement[.]" *Houck v. Substitute Trustee Servs.,* 791 F.3d 473, 480 (4th Cir. N.C. 2015).

The Plaintiff has not and does not consent to jurisdiction in the Bankruptcy Court mainly because this was never a bankruptcy case. Further, if it were an adversary proceeding to a bankruptcy case, all of the pendant claims are determined by a jury and all jury trials are referred to the United States District Court for the Western District of North Carolina by the District Court's "Order of Reference of Pre-Trial Proceedings in Bankruptcy Adversary Proceedings with Jury Trial Demands" 3:04-MC-156. Filing this case in Bankruptcy Court would have been a waste of time as the claims that warrant a jury determination would have been referred to District Court. With jurisdiction in District Court for the § 362 claim, because of the jury trial aspect, it only makes sense to file all claims there.

In fact, the Bankruptcy Court would likely not have reopened the bankruptcy case since there is no estate to administer, and under *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir., 1984) as adopted by the Fourth Circuit in *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143 (4th

3

Cir., 2000), there is no related-to jurisdiction for these claims and therefore no jurisdiction in bankruptcy court. Basically, without a bankruptcy estate the District Court had no authority under 28 U.S.C. § 157 to refer the case to the bankruptcy court.

Jurisdiction for any action in bankruptcy court is fundamentally related to a base bankruptcy case. *See,* 28 U.S.C. § 1334(b) and 28 U.S.C. § 157. There has never been a bankruptcy case in this lawsuit (*see, Houck v. Lifestore, et al*., Case 1:13-CV-00120 (Filed Apr. 26, 2013, W.D.N.C.)), which began properly in federal district court (*see, Houck v. Substitute Trustee Servs*., 791 F.3d 473) and was improperly referred to this court by the federal Magistrate. *See, Houck v. Lifestore Bank, et al*., Case 5:13-CV-00066, Order of Referral to the Bankruptcy Court (Doc 92) (Filed September 23, 2015).

Moreover, without a bankruptcy case, the claims in this case could never be "core matters" pursuant to *Stern v. Marshall*, 564 U.S. 2 (2011) and *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014).

The Fourth Circuit has pursued this question and developed an answer to the questions before this Court:

> This court has adopted the *Pacor* related to test and has held that a district court, "and derivatively the Bankruptcy court" has jurisdiction over an action related to a bankruptcy case "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." *Spartan Mills v. Bank of Am. Ill*., 112 F.3d 1251, 1255-56 (4th Cir.), *cert. denied*, 522 U.S. 969, 139 L. Ed. 2d 319, 118 S. Ct. 417 (1997) (quoting *Pacor*, 743 F.2d at 994 (internal quotation marks omitted)). The Supreme Court gave the following as an example of a civil case related to a bankruptcy case: "suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 307 n.5 (citing 1 *Collier on Bankruptcy* P 3.01[1][c][iv] at 3-28 (15th ed. 1994)). Notably, as is the case here, a related to case need not necessarily be against the debtor or his property. Nevertheless, the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." *Pacor*, 743 F.2d at 994. In this circuit, a civil case is

4

related to bankruptcy if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor*, 743 F.2d at 994), *see also, A. H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986).

*New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d at 151. As there is no base case and therefore no estate, there is no possibility that the outcome of the proceeding could alter Diana Houck's rights as a bankruptcy Debtor or the administration of any estate. This is not "an action related to a bankruptcy case." *Id*. It is simply an action.

While there are common issues of fact between the federal lawsuit and Diana's past bankruptcy filing, 28 U.S.C. § 1334(b) does not send this case to bankruptcy court. The Fourth Circuit has addressed the process for determination of jurisdiction in a situation such as this:

> Whether a bankruptcy court may exercise subject matter jurisdiction over a proceeding is determined by reference to 28 U.S.C. § 1334. Only after jurisdiction is established pursuant to § 1334 is resort made to 28 U.S.C. § 157 to determine whether the proceeding is "core" or "noncore." Bankruptcy courts are authorized to enter appropriate judgments and orders in core proceedings, 28 U.S.C. § 157(b)(1), and may enter final orders in noncore related proceedings with the consent of all the parties. 28 U.S.C. § 157(c)(2). The determination that a claim is core or noncore is one that should not be reached, however, if subject matter jurisdiction does not exist. See *Abner v. Mate Creek Loading, Inc. (In re Mid-Atl. Res. Corp.)*, 283 B.R. 176, 186 (S.D.W.Va. 2002) ("[A]n assertion that the action is a core or noncore proceeding is not an allegation of federal jurisdiction; rather, it relates to the power of the bankruptcy court to resolve the issues brought before it after jurisdiction is established.").

*Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 839 n.3 (4th Cir. Va. 2007). The § 1334 analysis comes before the § 157 analysis and because there is no estate, there is no jurisdiction under the *Pacor* Test. Without an estate, this civil suit can have no conceivable effect on any estate.

Simply put, this is a litigation case and not suited for the more transactional environment of the Bankruptcy Court. That is why the law has established the division of jurisdiction based on whether there is an estate to administer. It does not mean that Diana Houck was not injured by

5

the Defendants and that 11 U.S.C. § 362 was not violated giving rise to a personal claim under the § 362(k), with clearly established jurisdiction in district court. It simply means that the case is litigation and not part of the process of administering an estate and so the bankruptcy court should not be taxed with determining facts and conclusions of law in a case it will never administer.

None of the state claims are core matters pursuant 28 U.S.C. § 157(b)(2). Moreover, the claims are not non-core *Stern* claims because there is no bankruptcy case for the claims to relate to under *Stern*, *Arkison,* or even the *Pacor* test. This also answers the Courts question about a closed estate. The Plaintiff's bankruptcy estate was not reopened by the District Court or the Bankruptcy court. Placing the bankruptcy case number in the caption of orders in this case does not mean that the old bankruptcy case is reopened and with it the estate. That was never ordered by either court and the estate has not vested in a trustee. Indeed, if a new estate were opened it would be an involuntary Chapter 13 bankruptcy, which has no place under 11 U.S.C. § 303. The Fourth Circuit did say "it may be that the district court should have sent Houck's § 362(k) claim to the bankruptcy court in accordance with its standing order[.]" *Houck v. Substitute Trustee Servs.*, 791 F.3d at 483. However, this statement is clearly intended to be *dicta* and possibly instruction from the court to investigate further in that direction.

This Court does not have supplemental jurisdiction of state law claims because the Plaintiff has not consented to jurisdiction in this Court and the complaint was not filed in this court. It is not a bankruptcy case. For these reasons the Plaintiff does not believe that jurisdiction could be granted even by consent.

Since this Court does not have jurisdiction in any form, the referral should be withdrawn.

## **PREEMPTION**

6

In the previous appeal in this case, which was an appeal *dealing primarily with jurisdiction*, the Fourth Circuit found that there was jurisdiction in the District court to bring all of the claims. *See, Houck v. Substitute Trustee Servs.*, 791 F.3d 473 (4th Cir., 2015). The pendant state claims were discussed by the Court, which never raised any question about preemption. In fact, all of the state claims were reinstated by the Fourth Circuit:

> Based on its conclusion that Houck's allegations were insufficient to state a claim under § 362(k), the district court also concluded that her "state law claims fail as well." Because the court predicated its dismissal of the state law claims on a finding that we now reverse, we vacate its order dismissing those claims as well. In remanding them to the district court, however, we express no opinion as to their merit.

*Houck v. Substitute Trustee Servs.*, 791 F.3d at 483. When the Court discussed "merits" it was not talking about the jurisdiction of the claims. The Fourth Circuit has stated previously that the term "merits" is specifically <u>not</u> about jurisdiction:

> [A] decision is "on the merits" if it is based "on the legal rights as distinguished from mere matters of practice, procedure, **jurisdiction**, or form." *Fairmont Aluminum Co. v. Commissioner*, 222 F.2d 622, 625 (4th Cir.), cert. denied, 350 U.S. 838, 76 S. Ct. 76, 100 L. Ed. 748 (1955) (emphasis supplied).

*Schwartz v. United States*, 745 F. Supp. 1132, 1134 (D. Md. 1990). The Supreme Court has recently reinforced that definition:

> A judgment is normally said to have been rendered "on the merits" only if it was "delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments." *Black's Law Dictionary* 1199 (9th ed. 2009) (emphasis added). And as used in this context, the word "merits" is defined as "*[t]he intrinsic rights and wrongs of a case* as determined by matters of substance, in distinction from matters of form." *Webster's New International Dictionary* 1540 (2d ed. 1954) (emphasis added); see also, e.g., 9 *Oxford English Dictionary* 634 (2d ed. 1989) ("*the intrinsic 'rights and wrongs' of the matter*, in contradistinction to extraneous points such as the **competence of the tribunal** or the like" (emphasis added)); *Random House Dictionary of the English Language* 897 (1967) ("*the intrinsic right and wrong of a matter*, as a law case, unobscured by procedural details, technicalities, personal feelings, etc." (emphasis added)).

7

*Johnson v. Williams*, 133 S. Ct. 1088 (2013) (emphasis supplied). So the Fourth Circuit reinstated claims without determining if the claims themselves were valid claims or whether Diana Houck had stated facts to support a claim. It is doubtful that the Fourth Circuit would reinstate claims that it knew to be preempted in a case dealing with jurisdiction when it could have easily made a statement about the claims being preempted.

The pendant state claims in this case are not preempted by the bankruptcy code for several reasons. First, most of the state claims predate the filing of the bankruptcy petition. They simply have no relation at all to the bankruptcy other than the fact that the claims were property of the two estates that were created with the bankruptcy filings in 2011. However, with the dissolution of the estates, the state claims re-vested in the Plaintiff.

Any preemption analysis necessarily considers Congressional intent. Congress has only expressed a desire for the bankruptcy code to preempt a state or federal law in one section of the code, making its intent obvious. 11 U.S.C. § 544(b)(2) clearly states a case of preemption by the commencement of a bankruptcy case. Congress plainly uses the word "preempted" in the bankruptcy code. Congress could have stated preemption in any other part of the code and yet chose not to, even during the sweeping changes of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), effective October 17, 2005, for most sections. Since "statutes should not be read as a series of unrelated and isolated provisions," *Gonzales v. Oregon*, 546 U.S. 243, 273 (U.S. 2006) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (internal quotations omitted), we should conclude that if Congress had wanted preemption language in any other section of the code, it knew how to draft the statute accordingly.

In its *Ron Pair* decision, the Supreme Court held that a statute's "plain meaning should be conclusive except in the 'rare cases [in which] the literal application of

8

[the] statute will produce a result *demonstrably* at odds with the intentions of its drafters.'"Under *Ron Pair*, therefore, a court is obliged to apply the Plain Meaning Rule unless the party contending otherwise can demonstrate that the result would be contrary to that intended by Congress. Requiring a demonstration that the plain meaning of a statute is at odds with the intentions of its drafters is a more stringent mandate than requiring a showing that the statute's literal application is unreasonable in light of bankruptcy policy.

Some bankruptcy commentators maintain that sound bankruptcy policy supports adoption of the actual test. As the Supreme Court has repeatedly emphasized, however, Congress is the policymaker - not the courts. And, put simply, the modification of a statutory provision to achieve a preferable policy outcome is a task reserved to Congress.

*RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.)*, 361 F.3d 257, 269 (4th Cir. Md. 2004) (citations omitted). To say that the plain meaning should be ignored to imply a preemption is to graft a Congressional intent onto the bankruptcy code that is simply not there.

In *Walls v. Wells Fargo Bank, N.A*., 276 F.3d 502 (9th Cir. 2002), the 9th Circuit proffered an opinion which is not on all fours with this case, but is often cited in preemption analyses and so will be discussed here. In short, the *Walls* Court found that Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq*. (FDCPA), was pre-empted by 11 U.S.C. § 362, and that a debtor could not bring FDCPA claims against a creditor who violated the FDCPA and that 11 U.S.C. § 362 was the Debtor's only recourse against a creditor during the pendency of the Bankruptcy estate. This decision has been rejected by several Courts. In *Randolph v. IMBS, Inc*, 368 F.3d 726, (7th Cir., 2004) the Honorable Judge Easterbrook eviscerated *Walls*:

The district court wrote that § 362(h) "preempts" § 1692e(2)(A), but **this cannot be right. One federal statute does not preempt another.** See *Baker v. IBP, Inc.,* 357 F.3d 685, 688 (7th Cir.2004). **When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other--and repeal by implication is a rare bird indeed.** See, e.g., *Branch v. Smith,* 538 U.S. 254, 273, 123 S.Ct. 1429, 155 L.Ed.2d 407 (2003); *J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred International, Inc.,* 534 U.S. 124, 141-44, 122 S.Ct. 593, 151 L.Ed.2d 508 (2001) (collecting authority). It takes either irreconcilable conflict between the statutes or a clearly expressed legislative decision that one replace the other. Preemption is more readily inferred, so

9

decisions such as *Cox v. Zale*--which held that bankruptcy principles come from federal rather than state law--are not informative about which federal laws apply to what transactions. The district court did not find any clearly expressed decision that the Bankruptcy Code displaces the FDCPA, and the debt collectors do not contend that Congress made such a decision.  The argument, rather, is one based on the operational differences between the statutes.  These do not, however, add up to irreconcilable conflict; instead the two statutes overlap, and if the plaintiff shows a more serious transgression--the willful violation to which § 362(h) refers--then more substantial sanctions (such as punitive damages) are available.  **It is easy to enforce both statutes, and any debt collector can comply with both simultaneously.**

*Id.*, at 730 (emphasis supplied). The state and federal claims made in the present case do not conflict with any bankruptcy law. There is no pre-emption without conflict. The *Randolph* Court continues:

The Bankruptcy Code of 1986 does not work an implied repeal of the FDCPA, any more than the latter Act implicitly repeals itself. * * * To say that only the Code applies is to eliminate all control of negligent falsehoods. **Permitting remedies for negligent falsehoods would not contradict any portion of the Bankruptcy Code**, which therefore cannot be deemed to have repealed or curtailed § 1692e(2)(A) by implication.  To the extent that *Walls* holds otherwise, we do not follow it.

*Id.*, at 732, 733. As noted above, in the wake of these two cases, Congress did not alter § 362 or any other part of the bankruptcy code to explicitly preempt state and federal collection laws that supplement the bankruptcy code, even though it uses explicit preemption in § 544.

The Fourth Circuit District Courts tend to follow *Randolph*, with the exception of the Northern District of West Virginia. "To the extent that *Walls* [*v. Wells Fargo Bank, N.A., 276 F.3d 502, 510 (9th Cir. 2002)*] stands for such a broad rule, it appears to be an outlier." *Gamble v. Fradkin & Weber, P.A.*, 846 F. Supp. 2d 377, 381-83 (D. Md. 2012) (damages were granted for post-discharge violations of the FDCPA).

**The majority of Courts** have held that the Bankruptcy Code and FCRA or the FDCPA are not so irreconcilably in conflict that one displaces the other. *Randolph v. IMBS, Inc*., 368 F.3d 726, 730 (7th Cir. 2004). * * * The Court finds the Randolph line of cases, holding that there is not an irreconcilable conflict

10

between the statutes, to be the better reasoned of these authorities. Accordingly,
the Court finds that it has subject matter jurisdiction over the Debtor's claim.

*In re Jones*, 2011 Bankr. LEXIS 4083, 2-3 (Bankr. E.D. Va. Oct. 21, 2011) (emphasis supplied).
Very recently, in following *Randolph,* the Northern District of Ohio held that "since the
Randolph decision, almost all courts outside the circuit to examine the issue have rejected *Walls*,
favoring *Randolph*." *Davis v. Weinstein & Riley, P.S.*, 2013 U.S. Dist. LEXIS 138482 (N.D.
Ohio Sept. 26, 2013).

Even a district court in the Ninth Circuit has sidestepped *Walls* and allowed Washington
state collection laws to survive against a defendant where the plaintiff was a debtor in
bankruptcy. "Although the Ninth Circuit has not yet accepted *Randolph*, it has never dealt with
the kind of facts involved in *Randolph* and our case here. *Strasters v. Weinstein & Riley, P.S.*,
2010 U.S. Dist. LEXIS 134976 (E.D. Wash. Dec. 21, 2010)(affirmed in part, reversed in part and
remanded, *Strasters v. Weinstein & Riley PS*, 500 Fed. Appx. 682, 684 (9th Cir. Wash. 2012).

The New Mexico Bankruptcy Court determined that the federal and state collection law
claims that arose post-petition were not core matters and must be dismissed for a lack of subject
matter jurisdiction so the plaintiff could bring those claims in the appropriate court. It stated:

> The factual allegations contained in Plaintiff's Complaint concern Defendants'
> post-petition actions in serving upon Plaintiff a summons and complaint from a
> pre-petition debt collection action initiated in state court despite having actual
> notice of Plaintiff's pending bankruptcy case. Claims for damages under 11
> U.S.C. § 362(k) based on alleged actions taken post-petition in violation of the
> automatic stay fall squarely within this Court's core jurisdiction. Plaintiff's claims
> under the FDCPA, the NM-UPA, and New Mexico common law do not raise
> substantive rights created under bankruptcy law, can exist independently of a
> pending bankruptcy case, and are not otherwise defined as core proceedings under
> 28 U.S.C. §157(b)(2). Thus, for the Court to have jurisdiction over those claims,
> they must fall within the Court's non-core, "related-to" jurisdiction.

*Atwood v. GE Money Bank (In re Atwood)*, 452 B.R. 249, 254-255 (Bankr. D.N.M. 2011). While
the Plaintiff in this case has not filed claims under federal statutes outside the bankruptcy code,

the same principles apply, and some courts have used *Walls* to try to preempt state claims in the bankruptcy court so Plaintiff addresses *Walls* out of an abundance of caution.

## State Law Preemption

Our inquiry should begin with the Supreme Court and its articulation of the factors that show preemption of a state statute pursuant to Article VI, Clause 2 of the United States Constitution:

> Sometimes courts, when facing the pre-emption question, find language in the federal statute that reveals an explicit congressional intent to pre-empt state law. More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute's "structure and purpose," or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent. A federal statute, for example, may create a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Alternatively, federal law may be in "irreconcilable conflict" with state law. Compliance with both statutes, for example, may be a "physical impossibility,"; or, the state law may "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 31 (U.S. 1996) (internal citations omitted). The Supreme Court had also approached the sovereignty issue five years prior to *Barnett* when it required a plain statement from Congress to preempt state law:

> "[I]t is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides" this balance. We explained recently:

>> "If Congress intends to alter the 'usual constitutional balance between the States and the Federal Government,' **it must make its intention to do so 'unmistakably clear in the language of the statute.'** *Atascadero* was an Eleventh Amendment case, but a similar approach is applied in other contexts. **Congress should make its intention 'clear and manifest' if it intends to pre-empt the historic powers of the States.** . . . 'In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision.'

12

> This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere.

*Gregory v. Ashcroft*, 501 U.S. 452, 460-461 (U.S. 1991) (internal citations omitted) (emphasis supplied). Even the closest reading of 11 U.S.C. § 362 cannot show a "clear and manifest" intent by Congress to preempt debt collection laws in the several states simply because a person filed for relief. The intent would be to remove safeguards meant to protect people at their most vulnerable. The point of bankruptcy court is to administer estates and discharge debt. Protecting the stay is part of the administration of the estate, but that is an obvious necessity. It does not have to preclude further protection and it does not.

For case law directly on point we should continue with this Court's own precedence. The pre-emption question has been raised in this District before and considered by the Honorable Judge Marvin Wooten in *Sipe v. Conseco*, 2001 Bankr. LEXIS 2199 (Bankr. W.D.N.C. 2001). In short Judge Wooten stated that:

> The court notes that a violation of this lien-release statute (Chapter 20-58.4) may also constitute a violation of the North Carolina Retail Installment Sales Act (Chapter 25A) and furthermore a Unfair and Deceptive Trade Practice in Violation of *Chapter 75 of the North Carolina General Statutes*. This court held in September of 2000 that these statutes applied to bankruptcy debtors. ***See Debbie Curry Black v. First Citizens Bank & Trust Company, Case No. 93-40028, Adversary Proceeding No. 00-4019 (Judgment entered on September 6, 2000). See also Kevin and Candice James v. American General Finance, Inc., Case No. 97-40384, Adversary No. 97-4022 (Judgment entered on September 8, 1998, holding that the North Carolina Unfair Debt Collection Practices Act, Chapter 75-55, applied to debtors in bankruptcy).***

*Id.*, at 14 (emphasis in the original). Here the *Sipe* Court held that the same N.C. Gen. Stat. § 75-50, *et seq.*, claims filed in Diana Houck's District Court case apply to bankruptcy Debtors. This is a clear statement that these statutes are not pre-empted by § 362. To find that N.C. Gen. Stat. § 75 claims are preempted by the bankruptcy code is to contradict the precedence of this Court.

The Bankruptcy Court in the Eastern District of North Carolina has attacked this issue

head-on and resolved that there is no preemption of state statutes by § 362:

> With respect to these state law claims, **the court finds there was no express or implied preemption by Congress of state laws involving fair debt collection practices in passing the automatic stay provision of the Bankruptcy Code.** For further determination of conflict between the federal and state law, the Fourth Circuit has stated:
>
>> When we address the question of whether state law actually conflicts with federal law, we resolve the more specific inquiries of whether "it is impossible to comply with both state and federal law" or "whether the state law stands as an obstacle to the accomplishment of the full purposes and objectives" of federal law.
>
> *Worm v. American Cynammid Company*, 970 F.2d 1301, 1304 (citing *Silkwood v. Kerr-McGee Corp*., 464 U.S. 238, 248, 104 S. Ct. 615, 621, 78 L. Ed. 2d 443 (1984)). "Federal bankruptcy preempts state law, but only to the extent that there is an actual conflict between the two." *In re Tate*, 253 B.R. 653, 670 (Bankr. W.D.N.C. 2000) (citations omitted). In this case, **the state prohibited creditor activities are not obstacles to the accomplishment and full purposes of the federal law and does not pose a conflict to the bankruptcy law.**
>
> In *Eastern Equipment and Services Corp. v. Factory Point Nat. Bank, Bennington*, 236 F.3d 117 (2nd Cir. 2001) *and MSR Exploration, Ltd. v. Meridian Oil, Inc*., 74 F.3d 910 (9th Cir. 1996), the Courts held that a debtor could not bring a state law tort action against a creditor for violation of the automatic stay. In the *Eastern* case, the debtor brought claims for intentional or negligent infliction of emotional distress, abuse of process, and malicious prosecution. In the *MSR* case, the debtor brought a claim for malicious prosecution. All of these actions were for damages caused directly by the violation of the automatic stay, for which a remedy exists pursuant to 11 U.S.C. § 362(k). In this case, however, the debtor is bringing a separate cause of action under the state's fair debt collection practices act. The damages sought are not directly incurred as a result of the violation of the automatic stay, but are incurred by actions separate and apart from the violation of the automatic stay.

*Lofton v. Carolina Finance, LLC (in re Lofton)*, 07-00054-8-RDD-AP, pp.5-6 (Order dated

February 21, 2008, Bankr. EDNC) (emphasis supplied). *See also*, *in re Torres*, No. 10-02284-8-

SWH (Doc 40), (January 3, 2012 Bankr. EDNC), where Judge Humrickhouse awarded to the

Debtor's attorney fees for his action in the Middle District Court prosecuting violation of state

14

collection laws and violations of the FDCPA and the TCPA, while awarding damages in the
bankruptcy court for violations of § 362. It stands to reason that the Bankruptcy Judge would not
award fees to an attorney who is prosecuting preempted claims.

The State Courts and the Bankruptcy Courts mesh every day. The Bankruptcy Court is
not expected to promulgate the stay order in every state foreclosure action where a person has
filed bankruptcy and every state court files orders based on bankruptcy law:

> The State of North Carolina has a long-standing procedure to accommodate the
> bankruptcy discharge. N.C.Gen.Stat. § 1-245 (Cum.Supp.1981). This statute
> outlines a procedure which effectively gives notice that judgments which have
> been discharged in bankruptcy no longer have the power to create a lien upon
> property of the discharged debtor. See *A Survey of Statutory Changes in North
> Carolina in 1937*, 15 N.C.L.Rev. 320, 336 (1937).

*In re Clowney*, 19 B.R. 349, 353-354 (Bankr. M.D.N.C. 1982). This clearly supplements 11
U.S.C. § 524. No one has argued that this law is preempted by the bankruptcy code and would
create an action grafted onto a bankruptcy discharge because such is not the case; it is simply a
supplement to the bankruptcy code and allowable under the Constitution. The bankruptcy code
has not preempted this state law any more than it preempts N. C. Gen. Stat. § 75-55(3) which
prevents a debt collector from contacting a represented party. Certainly that state statute
supplements the bankruptcy code without conflicting with it.

A quick survey of North Carolina law shows several statutes that supplement the
bankruptcy code which will theoretically be deemed unconstitutional should the Court find that
all state laws which supplement the bankruptcy code are preempted. Some examples include:
N.C. Gen. Stat. § 25-9-102(13) (defining types of "proceeds" under U.C.C. Article 9 and
specifically rejecting the definition determined by *Hastie v. FDIC*, 2 F.3d 1042 (10th Cir. 1993)
for proceeds under 11 U.S.C. § 552(b)); N.C. Gen. Stat. § 25-9-102(21) (deriving new definition
for "new value" from 11 U.S.C. § 547(a)); N.C. Gen. Stat. § 1-245 (instructing clerk of superior

15

court to notate judgments as discharged in bankruptcy upon specific notice); N.C. Gen. Stat. §

22-4 (determining the evidentiary rule regarding a promise to pay a discharged debt); N.C. Gen.

Stat. § 58-70-115(1) (proscribing collection agencies from collecting debts discharged in

bankruptcy); N.C. Gen. Stat. § 75-55(1) (proscribing original creditors from collecting debts

discharged in bankruptcy); and N.C. Gen. Stat. § 59-65(c)(2) (determining obligations of the

partner of a debtor in bankruptcy).

In the instructional case of *in re Thomas*, 211 B.R. 838 (Bankr. S.C., 1997), the plaintiffs

had filed complaints alleging claims that sounded in state law, specifically:

> [D]amage to the reputation and relationships, mental and emotional anguish,
> stress and anxiety and fear for well being * * * Invasion of Privacy by Wrongful
> Intrusion/Harm * * * breach of contract * * *, breach of contract accompanied by
> a fraudulent act, breach of implied covenant of good faith and fair dealing,
> breach of express contract of good faith and fair dealing, fraud, slander per se * *
> * unpaid wages, assault * * *, battery * * * and intentional infliction of
> emotional distress.

*Id*., at 839-840. In *Thomas*, the Movant claimed that these causes of action were for personal

injury and therefore the Bankruptcy Court was "without jurisdiction pursuant to 28 U.S.C. §

157(b)(5) to decide the merits and therefore the automatic stay should be lifted to allow the State

Court to conduct the trials." *Id*, at 840. The Bankruptcy Court agreed, saying:

> Generally it is recognized that the bankruptcy courts do not have jurisdiction to
> decide personal injury tort claims based on state law. *Matter of Barker-Fowler
> Elec. Co.*, 141 B.R. 929, 939 (Bkrtcy.W.D.Mich.1992). Therefore, the first issue
> in consideration of these Motions is whether these claims asserted against the
> Debtor are "personal injury tort" claims within the meaning of 28 U.S.C. §
> 157(b)(5).

*Id*. The *Thomas* Court then delineated the decision split among Courts considering these cases.

Some interpret narrowly; most broadly. For example:

> [I]n either of these approaches, the question is whether the emotional trauma is
> the gravamen of the complaint or merely an element of damages… but if the
> claim for damages based upon physical and emotional complaints has been pled

16

as a separate personal injury tort, e.g. intentional or negligent infliction of emotional distress, it falls within 28 U.S.C. § 157(b)(5). *In re Littles*, 7,5 B.R. 240 (Bkrtcy.E.D.Pa.1987) citing *Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830 (11th Cir.1982).

*Id*, at 841.

The *Thomas* Court found that there are three procedural options once the claim is found

to lie within the shadow of 28 U.S.C. § 157(b)(5):

> [I]f the debtor chooses to remove, plaintiff may petition the district court to do one of three things, (1) preside over the personal injury action; (2) transfer the action for resolution in the district court in which the claim arose; or (3) abstain from hearing the action in favor of the state court pursuant to 28 U.S.C. § 1334(c)(1). See, *In re Littlejohn Littleton Colombus Hudgins*, 102 B.R. 495 (Bankr.E.D.Va.1989).

*Id*, at 842, 843. Citing, *Stokes v. Southeast Hotel Properties*, 877 F. Supp. 986 (W.D.N.C. 1994).

Iowa has considered this question and made a very clear and exhaustive statement:

> Even if collateral estoppel did not apply, this Court would find that Iowa Code § 537.7103 (5)(e) is not preempted by federal bankruptcy law or policy. * * * **Under the Supremacy Clause of the United States Constitution, state law is preempted whenever it contradicts or interferes with federal law**. * * *
>
> The state code provision at the center of this controversy pertains to creditors communicating with debtors represented by counsel.
>
> In the Bankruptcy Code, Congress has not expressly preempted state regulation in this field.
>
> * * * Neither the Code nor the Rules provide authority for a creditor to directly pursue the debtor when the debtor fails to file a statement of intentions with the court. Because § 521 does not provide a basis for creditors communicating directly with debtors represented by counsel, it can not preempt Iowa Code § 537.7103 (5)(e).
>
> **Federal Bankruptcy law does not occupy the entire field of communications with debtors represented by counsel in bankruptcy.** While the Bankruptcy Code simultaneously prohibits "any act to collect, assess, or recover" a pre-petition claim against the debtor and provides for reaffirmation agreements, it does not regulate the creditor's communications in arriving at a reaffirmation agreement unless their acts to collect, assess, or recover pre-petition claims violate the automatic stay. See 11 U.S.C. § 362 (a)(6). Thus, **the federal**

17

**regulation is limited in scope**. * * * As such, this state law does not conflict with the federal reaffirmation provisions, but rather, **compliments the Bankruptcy Code**. This effect is in line with the statement that principles of law, including bankruptcy, supplement the provisions of the Iowa Consumer Credit Code, not that they preempt it.

The state code provision does not impede federal law or policies of the Bankruptcy Code. * * * **The state statute does nothing to interfere with the purposes or policies underlying the reaffirmation provision. To the contrary, the state statute furthers the stated purpose of protecting the debtor from overreaching creditors.**

Based on the foregoing, this Court finds that Iowa Code § 537.7103 (5)(e) is not expressly or impliedly preempted by the reaffirmation provisions of the Bankruptcy Code.

*Sears, Roebuck & Co. v. Siverly (In re Siverly)*, 1997 Bankr. LEXIS 2438, 10-19 (Bankr. S.D. Iowa June 30, 1997) (citations omitted, emphasis supplied).

Texas has also offered a learned opinion on the matter on facts that resonate with the case at bar:

Resolution of FDCPA and TDCA claims has **no impact on the administration of a debtor's post discharge estate**. The debtor had already concluded their bankruptcy proceedings, **as the bankruptcy estate** has been discharged and **no longer exists**. When the factual allegations which give rise to a debtor's FDCPA and other state law claims all occurred post-petition, and as a result are not property of the debtor's estate. Whatever their outcome, **the debtor's estate will be unaffected and thus, the court lacks "related to" jurisdiction over these claims**. Any factual nexus between the alleged conduct violating the discharge injunction and FDCPA/state law claims is **insufficient**, in and of itself, **to confer "related to" jurisdiction on the Bankruptcy Court** to hear the claim. This court agrees with the **majority of courts** that have concluded bankruptcy courts do not have "related to" jurisdiction over a chapter 7 debtor's post petition claims for unfair debt collection practices. Resolution of the FDCPA and TDCA claims will have **no impact on the Plaintiff's bankruptcy estate**. Thus, this court concludes that it lacks jurisdiction to hear this claim, but will submit findings of fact and conclusions of law to the District Court.

*Garcia v. North Star Capital Acquisition, LLC (In re Garcia)*, 2013 Bankr. LEXIS 404, 15-17 (Bankr. W.D. Tex. Jan. 31, 2013) (emphasis supplied).

Another case from the Texas Supreme Court found similarly:

18

> The question in this case is whether a state malicious prosecution claim is preempted by the federal bankruptcy regime simply because the claim arose out of the filing of an adversary action in a bankruptcy proceeding. We hold that under the facts of this case, **Congress did not intend for such a claim to be preempted.**

*Graber v. Fuqua*, 279 S.W.3d 608, 610, (Tex. 2009) (emphasis supplied). While this case and the next deal with Chapter 7 Debtors, the point remains that the claims are not preempted because they have no effect on an estate and therefore no jurisdiction in the Bankruptcy Court.

Florida's district Courts seem to all be in agreement with the following:

> Clearly, all of the conduct alleged in the Complaint occurred postpetition. The Debtors' claims arose postpetition and do not constitute property of the estate. The Debtors are seeking to recover damages based on the claims for their own benefit, and not for the benefit of the estate. **Because the outcome of the proceeding will not have any effect on the estate** being administered in bankruptcy, the Debtors' **FDCPA and state law claims are not "related to" the bankruptcy case within the meaning of 28 U.S.C. § 1334(b), and this Court lacks subject matter jurisdiction** over the claims asserted in Count III and Count IV of the Complaint.

*Wynne v. Aurora Loan Servs., LLC (In re Wynne)*, 422 B.R. 763, 771-772 (Bankr. M.D. Fla. 2010) (citing *Johnston v. Valley Credit Servs. (In re Johnston)*, 2007 Bankr. LEXIS 1174, 15-19 (Bankr. N.D. W. Va. Apr. 12, 2007)) (emphasis supplied).

The Tenth Circuit proffered another opinion clearly showing that state collection laws are not preempted by § 362:

> [A] bankruptcy court may have jurisdiction over some post-confirmation matters, but jurisdiction is factually dependent and we conclude that the bankruptcy court did not have jurisdiction over the action brought by the Houliks against Santander in this case. * * *

> "Core proceedings are proceedings which have no existence outside of bankruptcy. Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." **Resolution of the Houliks' claim does not require the interpretation or enforcement of bankruptcy law.**

19

*Santander Consumer, USA, Inc. v. Houlik (In re Houlik)*, 481 B.R. 661, 673, 674 (B.A.P. 10th

Cir. 2012) (citations omitted).

In the interest of a balanced survey, *Johnson v. Telecheck Services*, 362 B.R. 730 (Bankr.

N.D. W. Va. 2007) has been referenced in this Court and so it should be discussed here. No other

court in this or any other circuit has cited this case. However, the month after the decision in

*Johnson v. Telecheck Services* was rendered, <u>the same judge</u> in a case related to *Johnson v.*

*Telecheck*, *Id*, found that state collection laws <u>are not preempted</u>:

> Claims arise under title 11 if the claims "clearly invoke substantive rights created
> by bankruptcy law." A proceeding is related to a bankruptcy case when "the
> outcome of that proceeding could conceivably have any effect on the estate. . . .
> [and] could alter the debtor's rights, liabilities, options, or freedom of action
> (either positively or negatively). . . ."
>
> Accordingly, for a bankruptcy court to have jurisdiction over a cause of action, a
> case or controversy must exist that arises under, arises in, or is related to a case
> under title 11. **Where a dispute concerns non-debtor parties, does not involve
> property of the estate, does not affect administration of the estate, or where
> the dispute will not affect payments to creditors under a confirmed plan, the
> bankruptcy court will generally not have jurisdiction under § 1334.** [Example
> cited]
>
> The Debtor's cause of action arising under W. Va. Code § 46A-2-128(e) is not
> one that "arises in" or "arises under" title 11 because a debtor's right to be free
> from a debt collector's contacts when the debtor is represented by an attorney
> exists independently of the Bankruptcy Code, and the Bankruptcy Code does not
> attempt to regulate how that contact is to be made, when and if such contact is
> appropriate. Likewise, Debtor's cause of action under § 46A-2-128(e) is not
> "related to" the Debtor's bankruptcy case because **whether the Debtor wins or
> loses, there will be no effect on the bankruptcy estate**. [Examples cited]
>
> Therefore, the court concludes that the jurisdictional grant in 28 U.S.C. § 1334, as
> referred to the bankruptcy courts pursuant to § 157(a), as interpreted by the Third
> Circuit in its "conceivable effects" test first articulated in *Pacor*, which has been
> adopted by the Court of Appeals for the Fourth Circuit, does not provide a basis
> for the court's exercise of jurisdiction over the Debtor's State law cause of action
> under W. Va. Code § 46A-2-124(e) because win, lose, or draw, the bankruptcy
> estate will be wholly unaffected by the outcome of the litigation.

20

Appeal: 16-1269     Doc: 3-2     Filed: 03/15/2016     Pg: 45 of 76

*Johnston v. Valley Credit Servs. (In re Johnston)*, 2007 Bankr. LEXIS 1174, 15-19 (Bankr. N.D. W. Va. Apr. 12, 2007) (internal citations omitted) (emphasis supplied).

Because the state claims arose mostly before the bankruptcy cases, the cases are closed and the action does not relate to any cases, and the bankruptcy code neither explicitly nor implicitly preempts the claims in this case, there is no preemption or even jurisdiction to determine such.

## STATUS OF THE COMPLAINT

At this point, none of the defendants have been dismissed completely. The first party to be dismissed was Substitute Trustee Services, Inc. (STS). *See*, *Houck v. Lifestore Bank, et al*., 5:13-CV-66, Memorandum and Order (Doc. 51) (Filed Oct. 1, 2013, Bankr. W.D.N.C.). That Order dismissed the federal and state claim against STS. *Id*., at p.5. "In this case, the district court dismissed completely Houck's claims against the Substitute Trustee in its October 1, 2013 order, leaving open only her claims against LifeStore and Grid Financial." *Houck v. Substitute Trustee Servs*., 791 F.3d 473.

The second Order to dismiss claims resulted in dismissal of all emotional distress claims against Lifestore Bank (Lifestore) and all other claims against Lifestore remained. *See*, *Houck v. Lifestore Bank, et al*., 5:13-CV-66, Memorandum and Order (Doc. 69) (Filed Jan. 15, 2014, Bankr. W.D.N.C.). The same Order dismissed the claims against Grid Financial Services, Inc. (Grid) for violations of 11 U.S.C. § 362(k) and N.C. Gen. Stat. § 75-55, for breach of contract and all emotional distress claims. *Id*. No mention was made of 11 U.S.C. § 105, fraud, constructive fraud, civil conspiracy or declaratory relief and so those claims remained against Lifestore and Grid.

The Fourth Circuit held that the Second Amended Complaint stated a cause of action for a violation of 11 U.S.C. § 362:

> [B]ecause the court later entered final judgment against the remaining defendants with its February 20, 2014 order before we considered Houck's interlocutory appeal, we conclude that the doctrine of cumulative finality applies and that we therefore have jurisdiction to hear her appeal.

*Houck v. Substitute Trustee Servs*., 791 F.3d at 479. Because the appeal was allowed based on the doctrine of cumulative finality, all Orders that dismissed claims were before the Court when it remanded the case:

> Based on its conclusion that Houck's allegations were insufficient to state a claim under § 362(k), the district court also concluded that her "state law claims fail as well." Because the court predicated its dismissal of the state law claims on a finding that we now reverse, we vacate its order dismissing those claims as well.

*Houck v. Substitute Trustee Servs*., 791 F.3d at 483. Given this, all claims against STS are still valid and the § 362 claims are valid against Lifestore and Grid. Grid may argue otherwise, but the Second Amended Complaint plainly states that all Defendants are involved in a violation of § 362. *Houck v. Lifestore Bank, et al*., 5:13-CV-66, Second Amended Complaint, para. 94 (Doc. 45) (Filed Aug. 28, 2013, Bankr. W.D.N.C.). The Fourth Circuit did not distinguish among Defendants concerning the § 362 claim.

The District Court Dismissed the § 75 and breach of contract claims against Grid because:

> Absent sufficient allegations that Grid had notice of the bankruptcy stay, Plaintiffs' state law claims for unfair debt collection (N.C. Gen. Stat § 75-55) and breach of contract fail as well. * * * Bald assertions that the foreclosure sale was "improper" are insufficient.

> For these reasons, and the other reasons stated in Defendant Grid's briefs, its Motion to Dismiss is granted as to Plaintiffs' claims under 11 U.S.C. § 362(k), N.C. Gen. Stat § 75-55, and for breach of contract.

22

*Houck v. Lifestore Bank, et al.*, 5:13-CV-66, Memorandum and Order p. 6 (Doc. 69) (Filed Jan.

15, 2014, Bankr. W.D.N.C.). Since the Fourth Circuit overturned the District Court's

determination that no claim for violation of § 362 was properly pleaded, it stands to reason that

this part of the Order was overturned as well. It was directly referenced by the Court of Appeals.

> Plaintiffs have alleged that Lifestore received notice of the second petition. For
> this reason, and the other reasons stated in Plaintiffs' briefs, Defendant Lifestore's
> Motion to Dismiss is denied as to those claims.

*Id*. All claims still stand against Lifestore, save the emotional distress claims. It appears that the

only claims that have been dismissed at this point are the emotional distress claims as to all

Defendants.

> For these reasons, and the other reasons stated in Defendants' briefs, their
> Motions to Dismiss are granted as to Plaintiff's claims for intentional and
> negligent infliction of emotional distress.

*Id*, p.7. Moreover, as the case has not been dismissed, it is the Plaintiff's contention that those

claims have still not ripened for appeal until the case is dismissed by the District Court. This also

leaves open the possibility of an appeal on the Order denying the injunction of the sale of the

homestead. *See*, *Houck v. Lifestore Bank, et al.*, Case 5:13-CV-00066, Order (Doc. 6) (Filed May

6, 2013).

### *Gaitor v. U.S. Bank. N.A. (In re Gaitor)*, 2015 Bankr. LEXIS 2545

The *Gaitor* Court bases its preemption opinion on *Johnston v. Telecheck Servs., Inc. (In

re Johnston)*, 362 B.R. 730, 735 (Bankr. N.D. W. Va. 2007) but initially ignores the case that

basically reversed that decision, *Johnston v. Valley Credit Servs. (In re Johnston)*, 2007 Bankr.

LEXIS 1174. The same person was Debtor in both cases and the same judge reversed his

holding. The *Gaitor* Court also cites *Tate v. NationsBanc Mortgage Corp. (In re Tate)*, 253 B.R.

653 (Bankr. W.D.N.C. 2000) but again ignores the later *Sipe v. Conseco*, 2001 Bankr. LEXIS

2199 which states as clearly as possible that N. C. Gen Stat. § 75 claims are allowed to be pleaded by a Debtor in bankruptcy. The import of these later opinions is inescapable and one cannot simply ignore them. The *Gaitor* Court stated:

> As the district court acknowledged in *Garfield v. Ocwen Loan Servicing, LLC*, 526 B.R. 471 (W.D.N.Y. 2015), "[c]ourts that have addressed the issue of preclusion of [Federal Debt Collection Practices Act] claims based on an alleged violation of the bankruptcy stay or discharge injunction are divided. However, the **majority view** holds that a FDCPA claim is not available in such cases."

*Gaitor v. U.S. Bank. N.A. (In re Gaitor)*, 2015 Bankr. LEXIS 2545, 10-11 (emphasis supplied). A modicum of research finds that this statement is simply inaccurate. *In re Jones*, 2011 Bankr. LEXIS 4083, *supra*, says exactly the opposite. Looking deeper into the opinion, the *Gaitor* Court based its "majority" assumption on the *Garfield* Court. "However, 'the majority view holds that a FDCPA claim is not available in such cases.' *Necci*, 297 B.R. at 379." *Garfield v. Ocwen Loan Servicing, LLC*, 526 B.R. 471, 476 (W.D.N.Y. 2015). Once again, the *Garfield* Court ignores the newer *Jones* Court research from 2011 and reaches all the way back to *Necci v. Universal Fid. Corp.*, 297 B.R. 376 (E.D.N.Y. 2003), an opinion eight years prior to *Jones* and decided before *Randolph* in 2004.

That is the chain of cases upon which the *Gaitor* Opinion depends. It is simply bad cherry-picking to find these old, superseded cases to support the idea that no other laws can supplement the bankruptcy code when there is absolutely nothing to bolster that opinion and a great weight against it. Moreover, it throws Supreme Court precedence on its ear. Federal statutes do not preempt federal statutes by implication. That cannot be clearer and there is not a case that has been tested in the Supreme Court that holds otherwise.

In the Plaintiff's view, the only argument for preemption by the bankruptcy code might be in an open Chapter 13 case where state statute prohibits the collection of a debt under the

24

automatic stay. If the case were dismissed, or in a jurisdiction where the Chapter 13 estate re-vests in the debtor after confirmation of the plan, or for pre-petition violations, or for violations other than strictly collection of debts under a stay, there is no preemption and in most cases no jurisdiction of the Court to consider the claim. The *Gaitor* Court came close to finding that:

> Courts applying the law of preemption to debtors' efforts to remedy violations of the discharge injunction have generally found nonbankruptcy causes of action to be preempted, at least to the extent that the nonbankruptcy cause of action depends on proof of the discharge violation.

*Gaitor v. U.S. Bank. N.A. (In re Gaitor)*, 2015 Bankr. LEXIS 2545, 8-9. But that is still too broad a statement. If the bankruptcy estate is closed there is no related-to jurisdiction and therefore no preemption by the bankruptcy code.

The *Gaitor* Court then found no supplemental jurisdiction to determine whether other N. C. Gen. Stat. § 75 claims were preempted or could be heard and based its opinion on *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831 as discussed *supra*. Those claims should have been brought in district court, as the Plaintiff in the case *sub judice* did. The point remains: if the bankruptcy court has no jurisdiction over a claim, the claim cannot be preempted by the bankruptcy code .

**WHEREAS**, the current binding law holds that there is no jurisdiction in the Bankruptcy Court to hear any of the claims in this case, the Plaintiff respectfully suggests to this court that the proper course of action is for the Court to recommend to the District Court that it has no jurisdiction in this case and the referral must be withdrawn.

**TODAY** is January 11, 2016.

By:    **COLLUM & PERRY**

*/s/ M. Shane Perry*
M. Shane Perry

25

N.C. Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
P: 704-663-4187
F: 704-663-4178
shane@collumperry.com
*Attorney for Plaintiff*

26

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

| | |
|---|---|
| **In re:** | **Chapter:** |
| **Debtor** | **Case No:** |
| **DIANA HOUCK and STEVEN G. TATE, Trustee** | |
| **Plaintiffs.** | **Adversary Proceeding No. 15-05028** |
| **v.** | |
| **LIFESTORE BANK, F.S.A.,  GRID FINANCIAL SERVICES, INC., and SUBSTITUTE TRUSTEE SERVICES, INC.,** | |
| **Defendants.** | |

### CERTIFICATE OF SERVICE

I, M. Shane Perry, do hereby certify that the foregoing **MEMORANDUM OF LAW** in this case, was served electronically through the CM/ECF system to:

| **LifeStore Bank, FSA** | **Grid Financial Services, Inc.** | **Substitute Trustee Services, Inc.** |
|---|---|---|
| c/o Amy C. Brodland | c/o Robert Mays | c/o Jeffrey Bunda |
| Reeves Law Firm | Van Winkle Law firm | Hutchens Law Firm |
| 202 East Main St. | 11 North Market Street, | 6230 Fairview Road, Suite 315 |
| West Jefferson, NC 28694 | Asheville, NC 28801 | Charlotte, NC 28210 |
| amy@reeveslawfirm.net | rmays@vwlawfirm.com | jeff.bunda@hutchenslawfirm.com |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |

**TODAY** is January 11, 2016.

By:     **/s/ M. Shane Perry**
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile:  704-663-4178
shane@collumperry.com

27

<table>
<tr><td>
FILED & JUDGMENT ENTERED<br>
Steven T. Salata<br><br>
Feb 01 2016<br><br>
Clerk, U.S. Bankruptcy Court<br>
Western District of North Carolina
</td></tr>
</table>

*Laura T Beyer*
_____
Laura T. Beyer
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

In re:                              )
                                    )
**DIANA HOUCK,**                    )        Chapter 13
                                    )        Case No. 11-51513
                 Debtor.           )
_____)
                                    )
**DIANA HOUCK and STEVEN G TATE,**  )
                                    )
                 Plaintiffs,       )
                                    )        Adversary Proceeding
v.                                  )        No. 15-5028
                                    )
**LIFESTORE BANK, GRID FINANCIAL**  )
**SERVICES, INC., and SUBSTITUTE**  )
**TRUSTEE SERVICES, INC.,**         )
                                    )
                 Defendants.       )
_____)

### ORDER STAYING ADVERSARY PROCEEDING

**THIS MATTER** is before the court on its own motion. On
November 3, 2015, the court entered an Order Requiring Briefing
on Questions of Status, Jurisdiction, and Preemption ("Order").
The Order set a hearing on January 29, 2016. Prior to the
January 29 hearing, the Plaintiffs filed a Motion to Withdraw
Referral ("Motion") with the United States District Court for

the Western District of North Carolina in case no. 5:13-CV-66 on December 22, 2015. The Motion asks the District Court to withdraw its September 23, 2015 Order of Referral to the Bankruptcy Court that sent this matter to this court. Pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011(a), motions to withdraw a case or proceeding from this court to the District Court are heard by a district judge. Pursuant to Fed. R. Bankr. P. 5011(c), "[t]he filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion." Given the importance of the answers to the questions posed by the Order to the resolution of this lawsuit, the court believes this adversary proceeding should be stayed until the District Court decides where this matter should be heard. Accordingly, this adversary proceeding is hereby **STAYED** pending the resolution of the Motion by the District Court.

    **SO ORDERED.**

This Order has been signed           United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO: 5:13-CV-66-DSC

| | |
|---|---|
| **DIANA LOUISE HOUCK, et. al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **LIFESTORE BANK, et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ORDER

**THIS MATTER** is before the Court on Plaintiff's "Motion to Withdraw Referral" (document #93) and "Brief …" (document #93-1). For the reasons previously stated in the Court's "Order of Referral to the Bankruptcy Court" (document #93), the Motion is <u>denied</u>.

The Clerk is directed to send copies of this Order to the parties' counsel, the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, and to <u>the Honorable Laura T. Beyer, Chief Judge of the United States Bankruptcy Court for the Western District of North Carolina</u>.

**SO ORDERED**.

Signed: February 1, 2016

David S. Cayer
United States Magistrate Judge

1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

DIANA LOUISE HOUCK

**PLAINTIFF**

V.

LIFESTORE BANK, F.S.A., GRID
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES, INC.

**DEFENDANTS**

MOTION FOR CERTIFICATION OF
INTERLOCUTORY APPEAL AND TO
STAY PROCEEDINGS

**COMES NOW** Plaintiff, Diana Louise Houck, by and through counsel, and pursuant to 28 U.S.C. § 1292(b), hereby respectfully moves this this Court for Certification for interlocutory appeal to the United States Court of Appeals for the Fourth Circuit of the Order filed February 1, 2016 (Doc. 95) which denied the Plaintiff's Motion to Withdraw.

Plaintiff also moves the Court for a Stay of all proceedings pending the outcome of the Interlocutory Appeal.

The Plaintiff will file a contemporaneous brief in support of these motions.

**TODAY** is February 2, 2016.

Respectfully submitted,

By:    **/s/ M. Shane Perry**
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile: 704-663-4178
shane@collumperry.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

DIANA LOUISE HOUCK

                                    PLAINTIFF

V.                                                    MOTION FOR CERTIFICATION OF
                                                      INTERLOCUTORY APPEAL AND TO
LIFESTORE BANK, F.S.A., GRID                          STAY PROCEEDINGS
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES, INC.

                                    DEFENDANTS

## CERTIFICATE OF SERVICE

I, M. Shane Perry, do hereby certify that the foregoing **MOTION** in this action was served electronically through the CM/ECF system to:

| LifeStore Bank, FSA | Grid Financial Services, Inc. | Substitute Trustee Services, Inc. |
|---|---|---|
| c/o Amy C. Brodland | c/o Robert Mays | c/o Jeffrey Bunda |
| Reeves Law Firm | Van Winkle Law firm | Hutchens Law Firm |
| 202 East Main St. | 11 North Market Street, | 6230 Fairview Road, Suite 315 |
| West Jefferson, NC 28694 | Asheville, NC 28801 | Charlotte, NC 28210 |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |

**TODAY** is February 2, 2016.

By:     **/s/ M. Shane Perry**
        Attorney for Plaintiffs
        NC Bar No. 35498
        109 W. Statesville Ave.
        Mooresville, NC 28115
        Telephone: 704-663-4187
        Facsimile: 704-663-4178
        shane@collumperry.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

| | |
|---|---|
| DIANA LOUISE HOUCK | |
| **PLAINTIFF** | |
| V. | **MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS** |
| LIFESTORE BANK, F.S.A., GRID FINANCIAL SERVICES, INC., and SUBSTITUTE TRUSTEE SERVICES, INC. | |
| **DEFENDANTS** | |

**COMES NOW** Plaintiff, Diana Louise Houck, by and through counsel, and in support of her Motion for Certification of Interlocutory Appeal and to Stay Proceedings pursuant to 28 U.S.C. § 1292(b) of the Order filed February 1, 2016 (Doc. 95) which denied the Plaintiff's Motion to Withdraw, hereby respectfully shows this Court the following:

28 U.S.C. § 1292(b) requires that when the Court is shown 1) that an order is not otherwise appealable under § 1292, 2) that the order involves a controlling question of law as to which there is substantial ground for difference of opinion, and 3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the Court must so state in an order and thereby certify the case to the Court of Appeals. The case *sub judice* is in such a posture.

First, the February 1, 2016 Order (the Order) does not finally decide all claims against all parties and therefore is not appealable under 28 U.S.C. § 1291. The Order is not appealable under any other section of 28 U.S.C. §1292.

Next, the Order is appropriate for immediate appeal under § 1292(b) because it raises a purely legal question involving jurisdiction created by federal statute, and thus does not depend

upon the development of any facts in this case. The issue of jurisdiction is fundamental to the continuation of the case as it is the *sine qua non* of the Court's authority to function at all.

Finally, the Plaintiff filed a Motion and supporting brief for this Court to withdraw the reference and was denied. There are substantial grounds for disagreeing with the Court's Order denying the motion to withdraw the reference, most notably *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143 (4th Cir. N.C. 2000) and *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831 (4th Cir. Va. 2007). This Court has referred the case to the bankruptcy court based on "11 [sic] U.S.C. § 157(a), the Court's "Amended Standing Order of Reference" 3:14-MC-44, and the Fourth Circuit's opinion in this case, see Document #83[.]" *Houck v. Lifestore Bank, et al.*, Case 5:13-CV-00066, Order of Referral to the Bankruptcy Court (Doc 92) (Filed September 23, 2015). (The Plaintiff presumes the Court meant 28 U.S.C. § 157(a).) But these are not enough without subject matter jurisdiction:

> [T]he "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of [1334(b)]." *Pacor*, 743 F.2d at 994. In this circuit, a civil case is related to bankruptcy if "the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *Pacor*, 743 F.2d at 994), *see also, A. H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986).

*New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d at 151. There is no base case in this civil suit and no estate because this suit was never filed as a bankruptcy case. There is no possibility that the outcome of the proceeding could alter the administration of *any estate* because none exists. There is no related-to jurisdiction for the bankruptcy court and it cannot render any judgement of any part of the case, including the 11 U.S.C. § 362 claim. As *New Horizon* holds, in this context this § 362 claim is not a bankruptcy matter because subject matter jurisdiction under 28 U.S.C. § 1334(b) must be determined *before* a case may be referred under 28 U.S.C. § 157(a).

The Bankruptcy Court to which this case was referred has the power to take one action under the law, and that is to report to the parties that it has no jurisdiction and then alert the District Court. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (U.S. 1998). *See also*, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005). The bankruptcy court has no jurisdiction to consider this case and any time it spends considering findings of fact or conclusions of law is a futility.

The case should be stayed until the Court of Appeals can determine the proper jurisdiction of this case. The stay will not cause harm to the Defendants as they have already foreclosed and sold the Plaintiff's property. However, a serious issue arises should the district court insist that the bankruptcy court review a case for which it has no jurisdiction.

**WHEREFORE**, the Plaintiffs respectfully moves this this Court for Certification for interlocutory appeal to the United States Court of Appeals for the Fourth Circuit of the Order filed February 1, 2016 (Doc. 95) which denied the Plaintiff's Motion to Withdraw.

**TODAY** is February 2, 2016.

Respectfully submitted,

By:   **/s/ M. Shane Perry**
Attorney for Plaintiffs
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile:  704-663-4178
shane@collumperry.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
File No. 5:13-CV-66

| | |
|---|---|
| DIANA LOUISE HOUCK | |
| **PLAINTIFF** | |
| **V.** | **MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS** |
| **LIFESTORE BANK, F.S.A., GRID FINANCIAL SERVICES, INC., and SUBSTITUTE TRUSTEE SERVICES, INC.** | |
| **DEFENDANTS** | |

## CERTIFICATE OF SERVICE

    I, M. Shane Perry, do hereby certify that the foregoing **MOTION** in this action was served electronically through the CM/ECF system to:

| **LifeStore Bank, FSA** | **Grid Financial Services, Inc.** | **Substitute Trustee Services, Inc.** |
|---|---|---|
| c/o Amy C. Brodland | c/o Robert Mays | c/o Jeffrey Bunda |
| Reeves Law Firm | Van Winkle Law firm | Hutchens Law Firm |
| 202 East Main St. | 11 North Market Street, | 6230 Fairview Road, Suite 315 |
| West Jefferson, NC 28694 | Asheville, NC 28801 | Charlotte, NC 28210 |
| Attorney for Defendant | Attorney for Defendant | Attorney for Defendant |

**TODAY** is February 2, 2016.

                     By:    **/s/ M. Shane Perry**
                                Attorney for Plaintiffs
                                NC Bar No. 35498
                                109 W. Statesville Ave.
                                Mooresville, NC 28115
                                Telephone: 704-663-4187
                                Facsimile:  704-663-4178
                                shane@collumperry.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Case No.: 5:13-cv-66

DIANA LOUISE HOUCK and STEVEN
G. TATE, Chapter 13 Trustee,

Plaintiffs,

v.

LIFESTORE BANK, F.S.A., GRID
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES,
INC.

Defendants.

## RESPONSE IN OPPOSITION TO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS

NOW COMES, Defendant Substitute Trustee Services, Inc. ("this Defendant") by and through its undersigned counsel, responding in opposition to the motion of the Plaintiff, Diana Louise Houck (the "Plaintiff"), for certification of interlocutory appeal and to stay proceedings pursuant to 28 U.S.C. § 1292(b). [D.E. # 96.]

For brevity's sake, this Defendant reincorporates and restates its position as set forth in its "memorandum regarding order requiring briefing on questions of status, jurisdiction and preemption" filed in connection with the companion adversary proceeding and attached as "Exhibit 1" to this response. More prescient to this request for certification, however, is the Fourth Circuit Court of Appeals' own discussion on the issue

1

from its July 1, 2015 opinion.  In short, the Court states on several occasions that the Plaintiff's claim for a willful violation of the 11 U.S.C. § 362(k) claim may be referred to the bankruptcy court under 28 U.S.C. § 157(b).  See <u>Houck v. Substitute Tr. Servs., Inc.</u>, 791 F.3d 473, 481–483 (4th Cir. 2015.)

Since the Fourth Circuit has already stated that the Plaintiff's claim for a violation of the automatic stay can be referred to the United States Bankruptcy Court for the Western District of North Carolina, there is not the "substantial ground for difference of opinion" required for interlocutory certification under 28 U.S.C. § 1292(b).  Accordingly, the Plaintiff's motion for certification of interlocutory appeal should be denied.

Hutchens Law Firm
Attorneys for Defendant Substitute
Trustee Services, Inc.

*/s/ Jeffrey A. Bunda*
N.C. Bar. No. 34432
6230 Fairview Road
Suite 315
Charlotte, N.C. 28210
Telephone:  704.357.6262
Facsimile: 704.362.9261
jeff.bunda@hutchenslawfirm.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Case No.: 5:13-cv-66

DIANA LOUISE HOUCK and STEVEN
G. TATE, Chapter 13 Trustee,

Plaintiffs,

v.

LIFESTORE BANK, F.S.A., GRID
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES,
INC.

Defendants.

## CERTIFICATE OF SERVICE

I, as attorney of record for Substitute Trustee Services, Inc. hereby certify that on the 19th day of February, 2016, I served a copy of the foregoing *RESPONSE IN OPPOSITION TO MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS* via the CM-ECF system as permitted by local rule to the attorneys listed below:

> Michael Shane Perry
> Collum & Perry, PLLC
> 174 N. Main St.
> Mooresville, NC 28115
>
> John Benjamin Reeves
> Reeves Law Firm, PLLC
> PO Box 67
> West Jefferson, NC 28694

3

Case 5:13-cv-00066-DSC Document 100-2  Filed 03/15/16  Page 63 of 76
Case 5:13-cv-00066-DSC  Document 97  Filed 02/15/16  Page 3 of 4    60

Robert A. Mays
Van Winkle Buck Walls Starnes & Davis, P.A.
11 N. Market St.
Asheville, NC 28801

Hutchens Law Firm
Attorneys for Defendant Substitute
Trustee Services, Inc.

*/s/ Jeffrey A. Bunda*
N.C. Bar No. 34432
6230 Fairview Road
Suite 315
Charlotte, North Carolina 28210
Telephone:  704.357.6262
Facsimile: 704.362.9261
Jeff.bunda@hskplaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

In re:

DIANA HOUCK,

          Debtor.

 

DIANA HOUCK and STEVEN G. TATE,

          Plaintiff(s),

V.

LIFESTORE BANK, F.S.A., GRID
FINANCIAL SERVICES, INC., and
SUBSTITUTE TRUSTEE SERVICES,
INC.,

          Defendant(s).

Chapter 13
Case No. 11-51513

Adversary Proceeding
No. 15-5028

## MEMORANDUM REGARDING ORDER REQUIRING BRIEFING ON QUESTIONS OF STATUS, JURISDICTION AND PREEMPTION

NOW COMES Substitute Trustee Services, Inc. ("STS"), hereby offering this memorandum in response to the Court's November 8, 2015 order requiring briefing on questions of status, jurisdiction and preemption. [D.E. #5.]

### PROCEDURAL AND FACTUAL HISTORY PERTAINING TO STS

After initially filing the Complaint on April 26, 2013, the Plaintiffs filed a second Amended Complaint on August 28, 2013 against STS, the secured lender, Lifestore Bank, F.S.A. ("Lifestore") and its servicing agent, Grid Financial Services, Inc. ("Grid" and, collectively with Lifestore, the "Lender

1

Defendants"), for damages arising from the servicing of Ms. Houck's loan that culminated in a foreclosure sale conducted by STS. Houck v. LifeStore Bank, F.S.A. et al., 5:13-cv-66, [D.E. #45]. Distilled to its core, the Plaintiffs' Complaint seeks damages from STS for conducting the foreclosure sale in violation of 11 U.S.C. § 362, and claims arising under state law. These state law causes of action include claims for violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1 et seq. ("UDTPA"); North Carolina's Debt Collection Act, N.C. GEN. STAT. § 75-50 et seq. ("NC-DCA"); breach of contract; actual and constructive fraud; intentional and negligent infliction of emotional distress; and civil conspiracy (collectively, the "State Law Claims"). Id.

For brevity's sake, STS hereby adopts and incorporates the Court's summary of the history of this litigation contained within its November 8, 2015 order. [D.E. #5, pp. 2-5.] In its order, the Court asked the parties to brief the following issues: (1) the status of the Complaint following the July 1, 2015 opinion of the United States Court of Appeals for the Fourth Circuit; (2) issues of the subject matter jurisdiction of the Bankruptcy Court; and (3) preemption of the Plaintiffs' state law claims by 11 U.S.C. § 362. STS' memorandum will only address issues of subject matter jurisdiction and preemption, since the Fourth Circuit's opinion clearly reinstated all claims

as to STS.  <u>Houck v. Substitute Tr. Servs., Inc.</u>, 791 F.3d 473
(4th Cir. 2015).

## **ARGUMENT**

The United States Bankruptcy Court for the Western District
of North Carolina has jurisdiction to hear the Plaintiffs'
claims against STS for conducting the foreclosure sale in
violation of the automatic stay because 11 U.S.C. § 362(k)
creates a cause of action for such violations and this Court has
jurisdiction to hear all claims arising under Title Eleven.  To
the extent the Plaintiffs assert pendent state law claims, any
claims for damages flowing from the stay violation are preempted
by the cause of action created by 11 U.S.C. § 362(k).  To the
extent the claims seek to impose co-conspirator liability upon
STS for the conduct of the Lender Defendants, this Court cannot
exercise supplemental jurisdiction because these claims are not
related to the administration of any bankruptcy estate.

For the reasons more particularly set forth below, this
Court should exercise jurisdiction over the Plaintiffs' 11
U.S.C. § 362(k) claim and decline to exercise jurisdiction over
any pendent state law claims.

3

A. THIS COURT HAS JURISIDCTION TO HEAR THE PLAINTIFFS' CLAIM FOR A VIOLATION OF THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(k).

This Court has jurisdiction to hear the Plaintiffs' claim against STS under 11 U.S.C. § 362(k) because the United States Congress has conferred jurisdiction upon this Court to consider all cases and controversies arising under Title Eleven of the United States Code. 28 U.S.C. § 1334(b) confers jurisdiction upon the United States District Court(s) over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(a) expressly provides that the several District Courts can refer cases "arising under" Title 11 to the Bankruptcy Court. A "proceeding is one 'arising under' Title 11 when it invokes a 'substantive right created by the Bankruptcy Code.'" In re Tate, 253 B.R. 653, 661–62 (Banrk. W.D.N.C. 2000)(citations omitted). Here, the Plaintiffs' cause of action for damages for violating the automatic stay is expressly created by the Bankruptcy Code. 11 U.S.C. § 362(k); see also Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 480 (4th Cir. 2015). Accordingly, this Court has jurisdiction to hear the Plaintiffs' claims for an alleged violation of the automatic stay.

4

B. THE STATE LAW CLAIMS SEEKING DAMAGES FLOWING FROM THE STAY
   VIOLATION ARE PREEMPTED BY 11 U.S.C. § 362(k).

Any State Law Claims seeking damages for the alleged

violation of the automatic stay are preempted by 11 U.S.C. §

362(k) because the Bankruptcy Code "occupies the field" for

damages arising from a stay violation.  Field preemption occurs

when Federal law controls a field such that there is no room for

state law to create an independent right or remedy.  See, e.g.,

Worm v. American Cynnamid Co., 970 F.2d 1301, 1304 (4th Cir.

1992).  In determining whether the Bankruptcy Code preempts non-

bankruptcy state law, the Bankruptcy Code preempts when state

law is expressly preempted or when Congress intended it occupy

the entire field in that area.  Johnston v. Telecheck Services

(In re Johnston), 362 B.R. 730, 735 (Bankr. N.D. W. Va. 2007).

The Bankruptcy Code, in many respects, occupies this field since

Congress has created "uniform [l]aws on the subject of

Bankruptcies throughout the United States" as required by the

United States Constitution.  U.S. Const. Art. I, § 8.

Courts generally find that state law claims sounding in

violations of the bankruptcy code are preempted, especially when

the bankruptcy code creates an express private right of action

for the alleged violations.  See Gaitor v. U.S. Bank, National

Association (In re Gaitor), Bankr. No. 13-80530, Adv. Pro. 14-

09059, 2015 WL 4611183 (Bankr. M.D.N.C. July 31, 2015).  When

the "application of State law ... is being used to imbricate the remedies provided by the Bankruptcy Code", the Bankruptcy Code preempts state law.  Id. (quoting Johnston, 362 B.R. at 736). When the complained-of conduct occurred prior to or after the bankruptcy case, however, such state law claims may not be preempted.  Id. (citing Waggett v. Select Portfolio Servicing, Inc. (In re Waggett), Bankr. No. 09-04152, Adv. Pro. 14-00096, 2015 WL 1384087 (Bankr. E.D.N.C. Mar. 23, 2015).

Here, the vast majority of the State Law Claims dress up the stay violation claim in state law clothing.  For instance, "Count Three – Violations of N.C. Gen. Stat. § 75-55" seeks redress under the NC-DCA for conducting the foreclosure sale during the pendency of the automatic stay. "Count Four – Breach of Contract" seeks relief from STS for not noticing the Bankruptcy trustee of the foreclosure sale while the automatic stay was in effect.  The Plaintiffs' claims for fraud and infliction of emotional distress also seek damages for the alleged stay violations, among other conduct complained of in the Complaint.  Unlike the debtor in Waggett whose claims were not pre-empted by the Bankruptcy Code because they involved conduct occurring post-discharge and independent of the Bankruptcy Code, 2015 WL 1384087 at *8, the Plaintiffs' State Law Claims here seeks damages for a violation of the automatic

stay during the brief existence of Ms. Houck's bankruptcy case, and thus these claims are preempted by the Bankruptcy Code.

C. THE BANKRUPTCY COURT CANNOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS BECAUSE THE STATE LAW CLAIMS ARE NOT RELATING TO A CASE UNDER TITLE 11.

The Bankruptcy Court cannot exercise supplemental jurisdiction over the non-preempted State Law Claims because these claims are not relating to a case under Title 11. 28 U.S.C. § 1367(a) provides that District Courts can exercise supplemental jurisdiction over claims that form the same "case or controversy under Article III of the United States Constitution." (emphasis added.) 28 U.S.C. § 1334(b) confers jurisdiction on the District Courts for "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(a) provides that each District Court has the power to refer bankruptcy cases to bankruptcy judges, but 28 U.S.C. § 157(b) only allows bankruptcy judges jurisdiction to hear cases arising under or related to a bankruptcy case.

"Related to" jurisdiction arises when the "outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." In re Celotex Corp.,

7

124 F.3d 619, 625 (4th Cir. 1997)(quoting Spartan Mills v. Bank of Am. Ill., 112 F.3d 1251, 1255–56 (4th Cir.), *cert. denied*, 522 U.S. 969, 139 L. Ed. 2d 319, 118 S. Ct. 417 (1997)(quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (2nd Cir. 1984).  If the case is one for which a District Court could otherwise exercise supplemental jurisdiction, a bankruptcy judge can only exercise supplemental jurisdiction over non–federal claims when the adjudication of those claims could impact the bankrupt estate.  See Enron Corp. v. Citigroup, Inc. (In re Enron Corp.), 353, B.R. 51, 61 (Bankr. S.D.N.Y. 2006).

As previously discussed, the remaining State Law Claims allege misconduct on the part of the Lender Defendants prior to the bankruptcy and only implicate STS to the extent these claims seek to impose co–conspirator liability.  The cause of action for co-conspirator liability arises independently from the bankruptcy estate and has no impact on the administration of Ms. Houck's multiple failed bankruptcy estates.  Although the District Court could conceivably exercise supplemental jurisdiction over claims arising independent of the Bankruptcy Code, the Bankruptcy Court cannot.  Enron Corp., 353 B.R. at 61.  Thus, the Bankruptcy Court cannot exercise supplemental jurisdiction over the remaining State Law Claims.

**CONCLUSION**

The Bankruptcy Court can hear the Plaintiffs' claim for a violation under 11 U.S.C. § 362(k) because it is a private cause of action expressly created by the Bankruptcy Code. The Bankruptcy Court, however, cannot exercise jurisdiction over the State Law Claims because some are preempted and others are beyond the scope of Congress' grant of jurisdiction to bankruptcy judges. Accordingly, this Court should proceed to hear the claim under 11 U.S.C. § 362 and decline to hear the State Law Claims.

Respectfully submitted this the 14th day of January, 2016.

> Hutchens Law Firm
> Attorneys for Defendant Substitute
> Trustee Services, Inc.
>
> */s/ Jeffrey A. Bunda*
> N.C. Bar. No. 34432
> Jeff.bunda@hutchenslawfirm.com
> */s/Lacey M. Moore*
> Lacey M. Moore
> N.C. Bar No. 30652
> 6230 Fairview Road
> Suite 315
> Charlotte, N.C. 28210
> Telephone:  704.357.6262
> Facsimile: 704.362.9261
> Lacey.moore@hutchenslawfirm.com

9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | |
|---|---|
| In re: | |
| DIANA HOUCK, | Chapter 13 Case No. 11-51513 |
| Debtor. | |
| DIANA HOUCK and STEVEN G. TATE, | |
| Plaintiff(s), | |
| V. | Adversary Proceeding No. 15-5028 |
| LIFESTORE BANK, F.S.A., GRID FINANCIAL SERVICES, INC., and SUBSTITUTE TRUSTEE SERVICES, INC., | |
| Defendant(s). | |

## CERTIFICATE OF SERVICE

I, as attorney of record for Substitute Trustee Services, Inc. hereby certify that on the 14th day of January, 2016, I served a copy of the foregoing Response to Plaintiffs' Motion to Reopen Case via the CM-ECF system as permitted by local rule to the attorneys listed below:

Michael Shane Perry
Collum & Perry, PLLC
174 N. Main St.
Mooresville, NC 28115

John Benjamin Reeves
Reeves Law Firm, PLLC
PO Box 67
West Jefferson, NC 28694

Robert A. Mays
Van Winkle Buck Walls Starnes & Davis, P.A.
11 N. Market St.
Asheville, NC 28801

10

Hutchens Law Firm
Attorneys for Defendant Substitute
Trustee Services, Inc.


/s/ *Jeffrey A. Bunda*
N.C. Bar No. 34432
/s/ *Lacey M. Moore*
Lacey M. Moore
N.C. Bar No. 30652
6230 Fairview Road
Suite 315
Charlotte, North Carolina 28210
Telephone:  704.357.6262
Facsimile: 704.362.9261
Lacey.moore@hskplaw.com
Jeff.bunda@hskplaw.com

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO: 5:13-CV-66-DSC

DIANA LOUISE HOUCK, et. al.,        )
                                    )
      Plaintiffs,                 )
                                    )
      v.                          )
                                    )
LIFESTORE BANK, et. al.,            )
                                    )
      Defendants.                 )


### ORDER

**THIS MATTER** is before the Court on Plaintiff's "Motion for Certification of Interlocutory Appeal and to Stay Proceedings" (document #96) and the parties' briefs and submissions.

For the reasons previously stated in the Court's "Order of Referral to the Bankruptcy Court" (document #93), and in Defendant Substitute Trustee Services, Inc. "Response …" (document #97) and "Memorandum …" (document #97-1), the Motion is <u>denied</u>.

The parties' "Consent Motion to Amend Scheduling Order" (document #88) which predated the referral of this case to the Bankruptcy Court, is <u>denied as moot</u>.

The Clerk is directed to send copies of this Order to the parties' counsel, the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, and to <u>the Honorable Laura T. Beyer, Chief Judge of the United States Bankruptcy Court for the Western District of North Carolina</u>.

**SO ORDERED**.

Signed: March 1, 2016

David S. Cayer
United States Magistrate Judge